# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

**In re:**

**RAYNOR SHINE SERVICES, LLC**

    **Debtor.**

_____/

**Case No:  6:20-bk-0577-KJ**
**CHAPTER 11**

**EMERGENCY RELIEF REQUESTED**
Hearing on or before February 5, 2020

## EMERGENCY MOTION OF THE DEBTOR-IN-POSSESSION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING

Raynor Shine Services, LLC, ("Debtor") by and through its undersigned counsel and pursuant to 11 U.S.C. §§ 363(c)(2) and 363(e) and the Federal Rules of Bankruptcy Procedure 4001(b), hereby moves for authority to use cash collateral and to provide adequate protection to Truist Bank, f/k/a Branch Banking and Trust Company ("Truist"), and requests an emergency hearing on the relief sought. In support of this motion, the Debtor states as follows:

### Jurisdiction

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 363. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (M).

### Background

2.  On January 30, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

3.  As more particularly set forth in the Debtor's Case Management Summary, Debtor is a Florida limited liability company formed November 15, 2013.  Debtor is engaged in green waste management, wood recycling, and the sale of recycled landscape products.  The Debtor utilizes large Grapple Trucks to processes organic vegetative debris from land clearing, tree and landscape companies, municipalities and the public. The debris is reduced and re-used.as colored mulch products, soil amendments, compost and wood fuel.  The Debtor has approximately 80 non-

insider employees. Gross revenue was approximately $10,000,000 for 2019. The Debtor's offices are located at 100 Hermit Smith Road, Apopka, Florida.

4. Subject to defenses, counterclaims, and offsets, if any, Truist may assert a first priority security interest in the Debtor's accounts and inventory by virtue of a recorded lien on the Debtor's personal property. As of the Petition Date, the Debtor owed Truist approximately $9,137,889 secured by a blanket lien on the Debtor's personal property and a mortgage on the real estate of the Debtor's affiliate Raynor Apopka Land Management LLC (RALM).

5. The cash collateral the Debtor seeks to use is comprised of cash on hand and funds to be received from sales during the Debtor's normal operations that are encumbered by the lien of Truist (the "Cash Collateral"). As of the Petition Date, Debtor had cash and accounts receivable in the amount of $880,062.42. Monthly revenue collected is approximately $900,000.

## Cash Collateral and the Relief Sought by the Debtor

6. The Debtor will require the use of approximately $959,039 of Cash Collateral to continue to operate its business for the next four weeks, and, depending on the month, a greater or lesser amount will be required for each comparable period thereafter. The Debtor will factor $200,000 of the receivables during each of the two weeks of February, and intends to factor $100,000 of the receivables in the third week. The Debtor will use the proceeds from the factoring and cash in use the Cash Collateral to pay operating expenses pending a final hearing on this Motion (the "Interim Period").

7. A budget reflecting the estimated income and expenses for the Debtor's business over the next four weeks is attached hereto as **Exhibit A** and is incorporated herein by reference.

8. The Debtor believes that the remaining collateral held by Truist in the Debtor's personal property and RALM's real estate provide adequate protection for the use of Cash Collateral. Subject to the lien granted to the DIP Factor, TRUIST shall have a replacement lien

on the post petition accounts and cash collateral. Attached hereto as **Exhibit B** is a short detail of the Debtor's opinion of values in Truist's collateral. The Debtor will operate on a positive cash flow basis during the interim four-week period and asserts all interests on Cash Collateral are adequately protected by Truist's liens and the replacement lien provided herein. Truist is adequately protected by virtue of the value of Debtor's property and that of RALM.

9. If the Debtor is not permitted to use Cash Collateral, it will be forced to halt operations, creating an adverse effect on creditors and employees, and will likely eliminate the total value of assets pledged as collateral. Thus, Debtor believes that the protections outlined herein are fair and reasonable under the circumstances and will be sufficient to protect the interests of the Truist's collateral from a diminution in value during the period of use by the Debtor. Accordingly, under the circumstances of this Chapter 11 case, the granting of the relief requested in the Motion is warranted.

10. Attached as **Exhibit C** is a proposed preliminary order authorizing the use of cash collateral.

**WHEREFORE,** the Debtor respectfully requests this Court enter an order granting the request for an emergency hearing, the request to use Cash Collateral on an interim period of four weeks, and for such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED** this 31st day of January, 2020.

/s/ Frank M. Wolff, Esq.
Frank M. Wolff, Esq.
Florida Bar No. 319521
fwolff@lathlamluna.com
bknotice1@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Tel: (407) 481-5800
Fax: (407) 481-5801
*Attorneys for Debtor*