**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **RAYNOR SHINE SERVICES, LLC** | ) | **Case no. 6:20-bk-00577-LVV** |
| | ) | |
| **RAYNOR APOPKA LAND** | ) | **Case no. 6:20-bk-00578-LVV** |
| **MANAGEMENT, LLC** | ) | |
| | ) | *Jointly Administered with* |
| Debtors. | ) | **Case no. 6:20-bk-00577-LVV** |
| _____ | ) | |

**JOINT DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR RAYNOR**
**SHINE SERVICES, LLC AND RAYNOR APOPKA LAND MANAGEMENT, LLC**

**August 26, 2020**

/s/ Frank M. Wolff
Frank M. Wolff, Esq.
Florida Bar No. 319521
fwolff@lathamluna.com
bknotice1@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Tel: (407) 481-5800
Fax: (407) 481-5801

Attorneys for Debtors and Debtors in Possession

THIS JOINT DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR RAYNOR SHINE SERVICES, LLC ("RSS") AND RAYNOR APOPKA LAND MANAGEMENT, LLC ("RALM") (THE "**DISCLOSURE STATEMENT**") MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR RAYNOR SHINE SERVICES, LLC AND RAYNOR APOPKA LAND MANAGEMENT, LLC (THE "**PLAN**") DATED AS OF **AUGUST 26, 2020** (AS FURTHER AMENDED FROM TIME TO TIME).

ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS THAT ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION.  THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. IN ADDITION, THE DISCLOSURE STATEMENT AND THE PLAN HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR THE ACCOMPANYING DOCUMENTS INCORPORATED BY REFERENCE OR REFERRED TO HEREIN AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. CREDITORS AND HOLDERS OF EQUITY INTERESTS ARE ENCOURAGED TO REVIEW THE DOCKET IN THE REORGANIZATION CASE IN ORDER TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS DISCLOSURE STATEMENT AND IN THE ACCOMPANYING PLAN CONCERNING THE HISTORY OF THE DEBTORS' BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY

i

INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY. NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE DEBTORS MAKE ANY REPRESENTATIONS CONCERNING SUCH INFORMATION.

IN THE EVENT THAT ANY IMPAIRED CLASS OF CLAIMS OR EQUITY INTERESTS VOTES TO REJECT THE PLAN, (1) THE DEBTORS MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN WITH RESPECT TO THAT CLASS UNDER THE BANKRUPTCY CODE'S "CRAMDOWN" PROVISIONS AND, IF REQUIRED, MAY AMEND THE PLAN TO CONFORM TO SUCH REQUIREMENTS, OR (2) THE PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN.

THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS TO ACCEPT THE PLAN AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH IN ARTICLE XVI OF THIS DISCLOSURE STATEMENT TITLED "VOTING ON AND CONFIRMATION OF THE PLAN."

## <u>INDEX OF EXHIBITS TO DISCLOSURE STATEMENT</u>

EXHIBIT A    Financial Projections

EXHIBIT B    Plan of Reorganization

## DISCLOSURE STATEMENT PURSUANT
## TO SECTION 1125 OF THE BANKRUPTCY CODE

## ARTICLE I - INTRODUCTION

The purpose of this Disclosure Statement is to provide the Holders of Claims and Equity Interests with adequate information to make an informed judgment about the Plan. This information includes, among other things, (a) the procedures for voting on the Plan, (b) a summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan, (c) general information about the history and business of the Debtor prior to the Petition Date, (d) the events leading to the filing of the Chapter 11 Case, (e) a summary of significant events occurring in the Chapter 11 Case and (f) a brief summary of the plan for liquidating the Debtor's assets.

**NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

The information contained herein has not been subject to audit.  For that reason, as well as the complexity of the Debtors' business and the impossibility of making assumptions, estimates and projections with complete accuracy, the Debtors are unable to warrant or represent the information contained herein is without inaccuracy, although every reasonable effort has been made to ensure that such information is accurate.

A copy of the Plan is attached.  The Disclosure Statement is qualified in its entirety by reference to the Plan.  If there is any inconsistency between the Plan and this Disclosure Statement, then the terms of the Plan shall control.  All capitalized terms used in this Disclosure Statement shall have the definitions specified in the Plan unless otherwise defined

**THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTORS RECOMMEND THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

## ARTICLE II - VOTING INSTRUCTIONS

**A.**      **Who May Vote**.  Only the Holders of Claims and Equity Interests which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan.

**B.**      **How to Vote**.  Each Holder of a Claim in a Voting Class should read the Disclosure Statement, together with the Plan and any Exhibits thereto, in their entirety.  After carefully reviewing the Plan and this Disclosure Statement and any Exhibits thereto, please complete the enclosed Ballot, including your vote with respect to the Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim.  If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Frank M. Wolff by telephone at (407) 481 5808 or by electronic transmission at fwolff@lathamluna.com.

Completed Ballots should be sent by regular mail, hand delivery, or overnight delivery, **SO AS TO BE RECEIVED NO LATER THAN THE BALLOT DEADLINE,** to:

Clerk of the United States Bankruptcy Court
George C. Young Federal Building
400 W. Washington Street, Suite 5100
Orlando, FL 32801

or completed Ballots can be filed electronically through the Bankruptcy Court's website at: www.flmb.uscourts.gov and selecting "Electronic Filings" and "Chapter 11 Ballots".

A copy of the Ballot should also be sent to:

Frank M. Wolff, Esquire
Latham, Luna, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
Orlando, FL 32801

**C.**      **Acceptance of Plan and Vote Required for Class Acceptance**.      Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.  Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

To meet the requirement for confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims or Equity Interests which votes to reject, or is deemed to vote to reject, the Plan (a "**Rejecting Class**"), the Debtor would have to show that all Classes junior to the Rejecting Class will not receive or retain any Property under the Plan unless all Holders of Claims or Equity Interests in the Rejecting Class receive or retain under the Plan Property having a value equal to the full amount of their Allowed Claims or Allowed Equity Interests.  For a more complete description of the implementation of the "cram-down" provisions of the Bankruptcy Code pursuant to the Plan, see "ARTICLE XVI - VOTING ON AND CONFIRMATION OF THE PLAN -- Confirmation Without Acceptance by All Impaired Classes."

**D.** **Confirmation Hearing**. The Bankruptcy Court will schedule a hearing to consider confirmation of the Plan (the "Confirmation Hearing"), which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing. The Bankruptcy Court has directed that any objection to confirmation of the Plan must be in writing and specify in detail the name and address of the objector, the basis for the objection and the specific grounds for the objection, and the amount of the Claim held by the objector. Consistent with Rule 3020(b) of the Federal Rules of Bankruptcy Procedure and Local Rule 3020-1(a), any such objection must be filed with the Bankruptcy Court and served upon each of the following parties, so as to be actually received on or before the deadline set by the Court:

| | |
|---|---|
| Debtor: | Frank M. Wolff, Esquire |
| | Latham, Luna, Eden & Beaudine, LLP |
| | 111 N. Magnolia Avenue, Suite 1400 |
| | Orlando, FL 32801 |
| | |
| U.S. Trustee: | Audrey Aleskovsky, Trial Attorney |
| | Office of the United States Trustee |
| | George C. Young Federal Building |
| | 400 West Washington St., Suite 1100 |
| | Orlando, FL 32801 |

## ARTICLE III - BACKGROUND

**A.** **History and Business of the Debtors Prior to the Chapter 11 Filing**.

1.      **Raynor Shine Services, LLC ("RSS")**. RSS is a Florida limited liability company formed November 15, 2013. RSS is engaged in green waste management, wood recycling, and the sale of recycled landscape products. RSS utilizes large grapple trucks to processes organic vegetative debris from land clearing, tree and landscape companies, municipalities and the public. The debris is reduced and re-used.as colored mulch products, soil amendments, compost and wood fuel. RALM is a real estate holding LLC out of which RSS operates its business. RSS has approximately 80 non-insider employees. Gross revenue was approximately $10,000,000 for 2019. RSS's monthly gross revenue is approximately $900,000.00.

2.      **Raynor Apopka Land Management, LLC ("RALM")**. RALM is a real estate company that owns real property located at 100 Hermit Smith Road, Apopka, Florida, out of which RSS operates its business.

**B.** **Liabilities**. Subject to defenses and offsets, and assuming claims are timely filed, Debtors estimate claims may be asserted as follows, including unsecured deficiency claims:

RSS Liabilities:

| | | |
|---|---|---|
| 1. | Secured | $10 million |
| 2. | Priority | $938,158 |
| 3. | Unsecured | $1.8 million |

3

RALM Liabilities:
1.    Secured:                $1.7 million

**C.    <u>Assets</u>.**

RSS Assets:

| | |
|---|---:|
| Cash, bank accounts, intangibles | $ 1,261,465.13 |
| Accounts receivable | $    756,290.90 |
| Inventory | $    961,263.99 |
| Office furnishings and equipment | $      10,000.00 |
| Business equipment and vehicles | <u>$13,222,217.00</u> |
| | $16,211,237.02 |

RALM Assets:
Real property                                $ 4,130,000.00

**D.    <u>Events Leading to the Chapter 11 Filing</u>.**  The following is a summary of primary factors that led to the filing of the Chapter 11 cases:

One portion of RSS's income has been the sale of hardwood to power plants for fuel.  Three of four power plant customers closed or converted to other fuels in early 2018.  With the loss of this market, RSS began to stockpile material to develop compost and basic soils.  A similar effort began at Apopka.  While composting and soil development is more profitable and sustainable that the hardwood sales, the loss of revenue from the power plants, and the cost of developing the inventory of compost and soil, has had a net negative impact of nearly $5 million on the RSS's cash flow.

RSS has two types of debt facilities with its major creditor Truist Bank, f/k/a Branch Banking and Trust Company.  One is a series of equipment loans secured by its vehicles, trucks and equipment.  The other is a line of credit.  RALM, which owns the real estate on which RSS conducts most of its operations, has given Truist a mortgage on its real estate.  Together, these debt facilities are the Truist Obligations.

In March of 2019 the line of credit came due.  RSS and Truist were not able to come to terms on the renewal of the line of credit.  After several attempts at obtaining a renewal and after the parties agreed to a forbearance, Truist declared the Truist Obligations in default.

On January 16, 2020, Trust sued both Debtors and both Debtors sought protection under Chapter 11 on January 30, 2020 in the Middle District of Florida, Orlando Division.

Prior to filing, the Debtors retained Henry Moorhead to act as Authorized Officer and charged him to manage the Debtors' business affairs during the Chapter 11.

# ARTICLE IV - DEBTOR'S CHAPTER 11 CASE

**A.**    **General**.  On January 30, 2020 (the "Petition Date") the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code as follows: **RAYNOR SHINE SERVICES, LLC,** Case No. 6:20-bk-00577-LVV and **RAYNOR APOPKA LAND MANAGEMENT, LLC**, Case No. 20bk-00578-LVV.

**B.**    **Joint Administration**.  On March 6, 2020, the Court entered its order granting the Debtors' motion for joint administration of the two bankruptcy cases (Doc. No. 83).

**C.**    **Cash Collateral.**  Debtors have been operating their business and using cash collateral pursuant to authorization of the Court.

**D.**    **Utilities.**  The Court has entered Orders conditionally granting Debtor's emergency motion for order approving adequate assurance proposal for payment of Post-Petition utility services; precluding utilities from altering, refusing, or discontinuing service; and establishing procedures for determining requests for additional assurances (Doc. Nos. 65 and 186).

**E.**    **Prepetition Priority Non-Affiliate Employee Wage Claims**.  The Court entered its order granting motion to pay prepetition non-affiliate employee wage claims (Doc. No. 35).

**F.**    **Post-Petition Factoring of Accounts Receivable**.  The Court authorized the Debtors to enter into a Post-Petition Invoice Purchasing/Factoring Arrangement with Commercial Funding, Inc., with a final order approving the arrangement entered March 6, 2020 (Doc. No. 79).

**G.**    **Payroll Protection Plan Loan.**  In response to the COVID-19 pandemic, RSS applied for and received a Payroll Protection Plan Loan (the "PPP Loan") in the amount of $998,330.00, with the funds disbursed by Fifth Third Bank, and filed a motion with the Court for approval of the PPP Loan (Doc. No. 231).  The court's final order approving the PPP Loan was entered August 4, 2020 (Doc. No. 295).

**H.**    **Retention of Professionals.**  The Debtor has employed the following professionals to assist the Debtor in this case:

| Name | Firm | Function |
| --- | --- | --- |
| Frank M. Wolff, | Latham, Luna, Eden & Beaudine, LLP | bankruptcy counsel |
| Jack M. Brennan | Gray Robinson, P.A. | special counsel – dispute with Agrifos Mining, LLLC |
| Deborah La Fleur | Gray Robinson, P.A. | special counsel – wage & hour investigation |
| Joseph M. Krusick | Moss, Krusick & Associates | accountant |

## I.       **Stay Relief**.

1.       Synergy Rents, LLC filed a Motion for Relief from Stay (Doc. No. 37) to enforce its *in rem* remedies against five pieces of equipment.  The Debtor consented (Doc. No. 87) and an order granting the motion was entered by the Court on May 27, 2020 (Doc. No. 100).

2.       Caterpillar Financial Services Corporation filed a motion for relief from stay (Doc. No. 60) to enforce its *in rem* remedies with regard to:  (a)  Agreement 736378 for lease of hydraulic excavator and 4 wheel loaders; (b) 754401 Agreement for lease of hydraulic excavator and 1 wheel loader; (c) Agreement 963042 for purchase of a Ford F550 service truck; and (d) a security interest in Additional Collateral, consisting of 5 trucks.  The Debtor filed its Response (Doc. No. 119) and an order granting in part and denying in part the relief from stay was entered April 28, 2020 (Doc. No. 147).

3.       Agrifos Mining, LLC filed a motion for relief from stay (Doc, no. 68) to with regard to its oral lease of non-residential real estate located at 3000 C.R. 640, Mulberry, Florida to RSS and the alleged abandonment of 100,000 yards of green waste by RSS.   Agrifos Mining, LLC also filed a motion for relief from stay (Doc, no. 69) with regard to its lease of nonresidential real estate located at Nichols Road, Mulberry, Florida to RSS.   RSS filed its Response (Doc.no. 115).  These and other contested matters with Agrifos Mining have been set for trial on September 17, 2020.

## J.       **Other Contested Matters**.

1.       **David Locker.**   The Debtor has filed an adversary against David Locker, former CFO of the Debtor, for preferential payments.  Mr. Locker has not responded to the Complaint and the Debtor is proceeding to obtain a default judgment.

2.       **Unique Deals LLC.**   The Debtor believes that it has rights under a material purchase agreement with Unique Deals LLC that is not being honored.  Demand has been made, and if there is no resolution, the Debtor may be filing an adversary proceeding.

3.       **Hillsborough County.**  The Debtor believes that it has rights under an agreement with Hillsborough County for wrongful termination of an agreement and damages.  Demand has been made, and if there is no resolution, the Debtor may be filing an adversary proceeding.

## ARTICLE V - BUSINESS PLAN AND PROJECTIONS.

The estimated recoveries to holders of Allowed Claims and Interests who receive such securities, depend on the ability of the Debtors to implement their business plan and to achieve the financial results projected on the basis of their business plan.  The pro forma condensed projections and cash flows included in this section give effect to all provisions of the Plan.

## A.       **Assumptions**.   The Debtor makes recommendations and assumptions for implementation of the business plan as follows:

1.       **Funding of the Plan**.  The distributions under the Plan will be funded principally by the sale or refinancing of the Debtors' equipment and sale of the Debtors' real estate.

2. **Revenues.** Debtor is projecting annual gross revenues will remain consistent with its recent historic performance.

**B.** **Financial Projections**. Debtor does not, as a matter of course, make long range external forecasts or projections of anticipated financial position or results of operation. Nevertheless, Debtor has prepared the following consolidated, condensed, projected financial statements, which present, to the best of management's information and belief, the expected financial position, results of operation, and cash flow of the Debtor for the five-year period following the Effective Date. The projections make numerous assumptions, some of which are set forth above, with respect to the operations of the Debtors, and other matters, most of which are beyond the control of the Debtors. Management is responsible for the preparation of the projections set forth in **Exhibit A** attached hereto and the underlying assumptions, which management believes are reasonable. The projections were not prepared with the view to compliance with published guidelines regarding financial projections or forecasts.

Because the projections are based on a number of assumptions and are inherently subject to significant uncertainties and contingencies that are beyond the control of Debtor, there can be no assurance that the projections will be realized, and actual results may be higher or lower than those shown, possibly by material amounts.

## ARTICLE VI - SUMMARY OF THE PLAN

**A.** **Introduction.** Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and stockholders. The formulation of a plan is the principal objective of a Chapter 11 case. In general, a Chapter 11 plan (i) divides claims and interests into separate classes, (ii) specifies the property that each class is to receive under such plan, and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor.

The summary of the Plan contained herein addresses only certain provisions of the Plan. As a summary, it is qualified in its entirety by reference to the Plan itself. Upon Confirmation and the Effective Date, the Plan shall bind the Debtors, all of the Debtors' Creditors, the Holders of Equity Interests, and other parties in interest except as expressly set forth in the Plan.

**B.** **Overview of the Plan**. Under the Plan, the Debtors will fund the Plan principally by the sale or refinance of equipment and sale of real estate, as set forth in Article IX of the Plan.

## ARTICLE VII - TREATMENT OF
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.** **Nonclassification**. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article VII.

**B.** **Administrative Expenses**. Except as otherwise provided in the Plan, each Holder of an Allowed Administrative Expense will be paid (a) on the Effective Date, an amount, in Cash,

equal to the Allowed Amount of its Administrative Expense, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense and the Debtors or Reorganized Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

**C.** **Fees and Charges**. All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid on or before the Effective Date.

**D.** **Applications for Allowance of Administrative Expenses**. Except as provided herein, all Holders of Administrative Expenses (including Holders of any Claims for non-ad valorem post-petition federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Bar Date will be forever barred from asserting such Administrative Expense against the Debtors, the Reorganized Debtor, or any of their respective Properties.

## ARTICLE VIII - DESIGNATION OF CLASSES OF CLAIMS

**A.** **In General.** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims. A Claim is classified (a) in a particular Class only to the extent the Claim qualifies within the description of that Class and (b) in a different Class to the extent the Claim qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.

**B.** **Unimpaired**. For purposes of this Plan, the following Classes of Claims are unimpaired:

*Class 1 – Allowed Other Secured Claims.* This class consists of Secured Claims not otherwise classified under the Plan, including Claims secured by security deposits held by utilities.

*Class 2 - Allowed Non-Tax Priority Claims*. This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses. Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims 30 days after the Effective Date. The Debtor believes that there is only one creditor in this class and that is VFS for the agreed amount of their collateral from the Petition date until VFS regained possession of its collateral.

*Class 20 - Allowed Claim of Fifth Third Bank.* This Class consists of the Payroll Protection Plan loan made by Fifth Third Bank. This claim is a post-petition loan, and therefore an administrative claim. However, the holder of this claim has agreed to a different treatment of its claim as provided in 1129(a)(9) in the form of a promissory note and will be paid on the terms of the note with no modification. Accordingly, this Claim is not impaired by the Plan.

*Class 21 – Allowed Claim of Commercial Funding, Inc.* The holder of this claim was the factor utilized in this case under a court authorized DIP financing program. The holder of this claim shall retain its rights in the collateral described in its loan agreement and will be paid according to its contract terms.

C.    **Impaired**. For purposes of this Plan, the following Claims are impaired:

1.    Class 3 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of BB&T Equipment Finance Corp. with regard to 2018 Diamond Z DZT1564B Tub Grinder VIN 1R9FX4632HC722218 with Caterpillar C32 Mobil Generator, VIN 5SLBG1521CL010988.

2.    Class 4 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of BB&T Equipment Finance Corp. with regard to (3) 2018 McCloskey 733RE Trommel Screens, 1/2" Screen Mesh installed in Screen Drums; (5) 2018 McCloskey ST00 Radial Stacking Conveyors 35"x100' Road Towable and Hopper Extensions; 2018 Mack CHU613 Truck, s/n 1M1AN07Y3JM028287.

3.    Class 5 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of Truist Bank (f/k/a Branch Banking & Trust Co.) with regard to loan ending 0002.

4.    Class 6 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of Truist Bank (f/k/a Branch Banking & Trust Co.) with regard to loan ending 0007.

5.    Class 7 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of Truist Bank (f/k/a Branch Banking & Trust Co.) with regard to loan ending 9005.

6.    Class 8 is comprised of the Allowed Secured Claim of Caterpillar Financial Services (CAT):

a.    Class 8a for Financed Equipment; and

b.    Class 8b for Leased Equipment.

7.    Class 9 is comprised of the Allowed Secured Claim of Komatsu Financial Limited Partnership:

a.    Class 9a for Financed Equipment; and

b.    Class 9b for Leased Equipment.

8.    Class 10 is comprised of the Allowed Secured Claim of Hanmi Bank with regard to Leased Equipment.

9.      Class 11 is comprised of the Allowed Secured Claim of VFS US Leasing, LLC with regard to Leased Equipment.

10.     Class 12 is comprised of the Allowed Secured Claim of Chromoscape, Inc.

11.     Class 13 is comprised of the Allowed Secured Claim of Brad Dinkel.

12.     Class 14 is comprised of the Allowed Secured Claim of Engage4Fun, LLC.

13.     Class 15 is comprised of the Allowed Secured Claim of Optimal Equipment Maintenance, LLC.

14.     Class 16 is comprised of all Allowed General Unsecured Claims greater than $1,500.

15.     Class 17 is comprised of all Allowed General Unsecured Claims of $1,500 or less.

16.     Class 18 is comprised of all Allowed Insider Unsecured Claims.

17.     Class 19 is comprised of all Equity Interests.

## ARTICLE IX - TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.      In General**.  Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article IX and as set forth in Article V of the Plan.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever.

**B.      Unimpaired**.  For purposes of this Plan, the following Classes of Claims are unimpaired, and the Plan does not alter the legal, equitable, or contractual rights of such Claims:

*Class 1 – Allowed Other Secured Claims*.  This class consists of Secured Claims not otherwise classified under the Plan, including Claims secured by security deposits held by utilities.

*Class 2 - Allowed Non-Tax Priority Claims*.  This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses.  Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims.  Holders of such claims shall receive on account of such Claims, cash in the amount of such Claims.

*Class 20 - Allowed Claim of Fifth Third Bank*.  This Class consists of the Payroll Protection Plan loan made by Fifth Third Bank.  This claim is a post-petition loan, and therefore an administrative claim.  However, the holder of this claim has agreed to a different treatment of its claim as provided in § 1129(a)(9) in the form of a promissory note and will be paid on the terms of the note with no modification.  Accordingly, this Claim is not impaired by the Plan.

*Class 21 – Allowed Claim of Commercial Funding, Inc*.  The holder of this claim was the factor utilized in this case under a court authorized DIP financing program.  The holder of this claim shall retain its rights in the collateral described in its loan agreement and will be paid according to its contract terms.

C.    **Impaired**.  For purposes of this Plan, the following Claims are impaired:

1.    *Classes 3, 4, 5, 6 and 7 - Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of BB&T Equipment Finance Corp and Truist Bank ("Summit")*.   Holder of the Allowed Claim in Classes 3,  4, 5, 6 and 7:

a.    will receive 30 days after the Effective Date a payment of $4,000,000; and

b.    will receive a promissory note (the Promissory Note") in the amount of $100,000 payable over 12 months at 5% interest, with the first payment due on the first anniversary date of the Effective Date and equal monthly payments on the same day for the following 11 months.  The form of the Promissory Note is attached to the Plan as Exhibit A;

c.    Summit will release its lien on the real estate owned by RAYNOR APOPKA LAND MANAGEMENT, LLC, the legal description of which is attached to the Plan as Exhibit B.

d.    Summit will retain its lien on the equipment and vehicles listed on Exhibit C  of the Plan (the Equipment for Sale);

e.    Summit will release its lien on the equipment listed on Exhibit D of the Plan  (the Refinanced Equipment); and

f.    Summit will receive an unsecured claim in the amount equal to the amount of the difference between claims 41-2, 42-2, and 43-2 and the sum of $4,000,000, the Promissory Note, and the net proceeds from the sale of Equipment for Sale.

2.    *Class 8 - Allowed Secured Claims of Caterpillar Financial Services (CAT)* as follows:

a.    *Class 8a - Financed Equipment* comprised of:

i.    Ford F550 Mechanics truck VIN 1FDUF5HT6BEB25534.  Holder of such claim will:

(1)    Retain the lien securing the Claim in the amount of $20,000 for the Allowed Amount of the Claim.

(2)    Receive on account of its Allowed Secured Claim $20,000 in equal monthly cash payments over five years at 2.99% interest beginning on the Distribution Date.

ii.    Ford F550 Mechanics truck VIN 1FDUF5GT4CEB2330.

Holder of such claim will:

(1)     Retain the lien securing the Claim in the amount of $20,000 for the Allowed Amount of the Claim.

(2)     Receive on account of its Allowed Secured Claim $20,000 in equal monthly cash payments over five years at 2.99% interest beginning on the Distribution Date.

b.     ***Class 8b - Leased Equipment***. These leases have been rejected and all Leased Equipment has been returned to CAT.  If there is any Allowed Claim for lease rejection damages, such claim will be treated as a Class 16 Allowed General Unsecured Claim.

3.     ***Class 9 - Allowed Secured Claims of Komatsu Financial Limited Partnership (Komatsu)*** as follows:

a.     ***Class 9a - Financed Equipment*** comprised of:

i.     Komatsu PC210LC-11 Hydraulic Excavator, S/N A1243. This equipment has been surrendered to Komatsu; and

ii.     Komatsu WA200-8 Wheel Loader, S/N 85056 and Komatsu WA200-8 Wheel Loader, S/N 85024.  The Holder of such Claim will:

(1)     Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim.

(2)     Receive on account of account of the Allowed Secured Claim $7,329.12 monthly adequate protection payments through the remainder of the existing finance agreement.

b.     ***Class 9b - Leased Equipment*** comprised of:

i.     (Lease 003)  Komatsu PC210LC-11 Hydraulic Excavator, S/N 500363.  This lease has been rejected and this equipment has been returned to Komatsu.  If there is any Allowed Claim for lease rejection damages, such claim will be treated as a Class 16 Allowed General Unsecured Claim.

ii.     (Lease 000) Komatsu PC210LC-11 Hydraulic Excavator, S/N 500276; (Lease 001) Komatsu WA270-7 Wheel Loader, S/N 81296.  (Lease 004) Komatsu WA270-7 Wheel Loader, S/N 81299.  The Holder of such Claim will:

(1)     Receive $15,000 on the Effective Date; and

(2)     Receive a promissory note secured by this equipment in the amount of $312,046.42 at 2.99% interest, payable in 36 monthly payments of

12

$9079 beginning on the Distribution Date.

        iii.    (Lease 007) Power Screen Terex Phoenix/Trommel Crusher, S/N TRX00178CDGGB3306.  The Holder of such Claim will:

        1.    Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim.

        2.    Receive payment of $44,893.08 to cure the lease arrearage, to be paid 30 days after the Effective Date ; and

        3.    Receive monthly rent payment of $6,123.45, commencing May, 2020, through the remaining life of the lease.

    8.    ***Class 10 - Allowed Secured Claim of Hanmi Bank*** with regard to the lease of 2017 Mack Grapple Truck GU813, VIN 1M2AX16C1HMO38070.  The Holder of such claim will:

    a.    Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim;

    b.    Receive payment of $8,332.50 to cure the lease arrearage, to be paid 30 days after the Effective Date; and

    c.    Receive monthly rent payments of $3,982.08 through the remaining life of the Lease.

    9.    ***Class 11 - Allowed Secured Claim of VFS US Leasing, LLC (VFS)*** with regard to the lease of:

    a.    Mack CHU613 Truck VIN 1M1AN09Y7JM026975; Mack CHU613 Truck VIN 1M1AN07Y6JM028042; and Mack CHU613 Truck VIN 1M1AN07YXJM027024.  The Lease for this equipment has been rejected and the equipment has been returned to VFS.  If there is any Allowed Claim for lease rejection damages, such claim will be treated as a Class 16 Allowed General Unsecured Claim.

    b.    2017 Mack GU813, S/N: 1M2AX16C3HM038071; 2017 Robotec Elite 910 Grappler S/N 131257-19-1.  The Holder of this Claim will:

    (i)    Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim;

    (ii)    Receive payment of $8,005 to cure the lease arrearage, to be paid on the Distribution Date; and

    (iii)    Receive monthly rent payments of $4,240.91 through the

remaining life of the Lease.

    c. 2081 Mack GU813, S/N 1M2AX16C3HM038068 with 2017 Robotec Elite 910 Grappler & Dump 2017; Mack GU813, S/N 1M2AX16C1HM038069 with 2017 Robotec Elite 910 Grappler & Dump.   The Holder of this claim will:

      (i) Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim;

      (ii) Receive payment of $18,352 to cure the lease arrearage, to be paid on the Distribution Date; and

      (iii) Receive monthly rent payments of $8,404.41 through the remaining life of the Lease.

   10. ***Class 12 - Allowed Secured Claim of Chromoscape, Inc***. for an Amerimulch ColorTrom 300 Coloring System.  The Debtor has filed an objection to this claim, and believes this claim will be disallowed in full.

   11. ***Class 13 - the Secured Claim of Brad Dinkel***.   The Debtor has filed an objection to this claim, and believes this claim will be disallowed in full.

   12. ***Class 14 - Allowed Secured Claim of Engage4Fun, LLC*** for the following equipment:

   John Deere 644K/ Wheel Loader, VIN 1DW644KZJEF665656
   John Deere 644K/ Wheel Loader, VIN 1DW644ZHEF664630
   John Deere 644K/ Wheel Loader VIN 1DW644KZ2HF666735
   John Deere 644K/ Wheel Loader VIN 1DW644KZHEF665468

The Holder of this claim will receive a cash payment on the Distribution Date in an amount equal to $375,000.

   13. C***lass 15 – Allowed Secured Claim of Optimal Equipment Maintenance, LLC***.  Class 15 is comprised of a mechanic's lien on the Debtors' 2015 Peterbilt 567, VIN 1XPCDP9XXFD307525.The Holder of this claim will be paid the amount of $11,000 on the Distribution Date.

   14. ***Class 16 - Allowed General Unsecured Claims greater than $1,500***. Class 16 is comprised of all Allowed General Unsecured Claims greater than $1,500.  The holders of such Claims shall receive on account of such Claims a Pro Rata Share of the lesser of: (i) the amount of Allowed General Unsecured Claims greater than $1,500; and (ii) a pro rata share of $600,000 which shall be paid $100,000 30 days after the Effective Date and their pro rata share in 10 equal monthly installments totaling $500,000 beginning on the 60th day after the Effective Date.

15.    ***Class 17 – Allowed General Unsecured Claims of $1,500 or less***.  Class 17 is comprised of Allowed General Unsecured Claims of $1,500 or less.  All unsecured creditors whose claims are $1,500 or less or who agree to reduce their claims to $1,500 shall be paid in full on the Distribution Date

16.    ***Class 18 - Allowed Insider Unsecured Claims***.  Class 18 is comprised of all Insider Unsecured Claims.  Allowed Insider Unsecured Claims shall not receive any distributions under the Plan.  Class 18 is Impaired and is entitled to vote to accept or reject the Plan.

17.    ***Class 19 - Equity Interests***.  Class 19 is comprised of all Equity Interests in the Debtors.    The interests in Raynor Apopka Estate Management LLC shall be cancelled.  The Holder of Interests in Raynor Shine Services,  LLC shall retain their interests after confirmation.

**D.**    **Allowed Priority Tax Claims**.  Such Claims consist of Unsecured Claims of governmental units for taxes allowed under Bankruptcy Code §507(a)(8).  Debtors estimate Priority Tax Claims will be under $1.2 million. The holders of Allowed Priority Tax Claims will be paid:

1.    Principal equal to the amount of the Allowed Priority Tax Claims.

2.    Interest at a rate equal to the rate determined under applicable non bankruptcy law.  The rate will be determined as of the calendar month in which the Plan is confirmed.

3.    equal monthly payments of principal and interest commencing 30 days after the Effective Date and on the same date of each month thereafter over a period not exceeding five (5) years following the Petition Date.

**E.**    **Allowed Administrative Claims**.  Administrative Expenses are for any cost or expense of the Chapter 11 Case allowed under Bankruptcy Code §§503(b) and 507(a)(1), including all actual and necessary costs and expenses relating to the preservation of the Debtor's estate or the operation of the Debtor's business, all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Code, and all payments arising from the assumption of executory contracts pursuant to Bankruptcy Code §365(b)(1).

Administrative Expenses against the Debtor consist primarily of professional fees which are subject to prior approval of the Bankruptcy Court.  Debtor estimates administrative expenses will be less than $700,000.

Each holder of an Allowed Administrative Expense against the Debtor shall receive on account of such Allowed Administrative Expense, the amount of the Allowed Administrative Expense in one cash payment on the Confirmation Date, or shall receive such other treatment as agreed upon in writing by the Debtor and such holder; provided that: (i) an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business by the Debtor; and (ii) the payment of an Allowed Administrative Expense representing a right to payment under §§365(b)(1)(A) and

15

365(b)(1)(B) of the Bankruptcy Code may be made in one or more cash payments over a period of twelve months or such other period as is determined to be appropriate by the Bankruptcy Court.

**F.    Impairment/Classification Controversies**.  If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

## ARTICLE X - TREATMENT OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    General**.  The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  Rejection or assumption may be effected pursuant to a plan of reorganization. In addition to any executory contract or unexpired lease previously assumed or rejected pursuant to order of the Bankruptcy Court, the Plan constitutes and incorporates any motion by the Debtor to assume or reject executory contracts and leases.

**B.    Assume**.  Debtor will assume the following executory contracts and unexpired leases:

| Name | Contract/Lease |
|------|----------------|
| Ocoee Lease | Lease of nonresidential property located at 850 Ocoee-Apopka Road, Ocoee, FL |

**C.    Reject**.  Debtor shall reject all executory contracts and unexpired leases not listed in subparagraph B. or assumed pursuant to Final Order of the Bankruptcy Court.  If an executory contract or unexpired lease is rejected, then the other party to the agreement may file a claim for damages incurred by reason of rejection within such time as the bankruptcy court may allow.  In the case of rejection of employment agreements and leases of real property, damages are limited under the Bankruptcy Code.

## ARTICLE XI - MEANS OF IMPLEMENTATION OF THE PLAN

**A.    General Overview of the Plan.**  The distributions under the Plan will be funded principally by the sale or refinancing if the Debtors' equipment and the sale of the Debtors' real estate, as set forth in Article IX of the Plan.

**B.    Vesting of Certain Assets of the Estate in the Debtor**.  On the Effective Date, except as otherwise expressly provided in the Plan, all Assets of the Estate (including the Causes of Action) shall vest in the Reorganized Debtor, Raynor Shine Services, LLC, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, encumbrances, and all other interests of every kind and nature, and the Confirmation Order shall so provide. As of the Effective Date, Raynor Shine Services, LLC shall be responsible for the operation of the business, the management of the Assets, the pursuit of Causes of Action, the payment of Allowed Clams, and such other duties imposed by the Plan and the Confirmation Order. All privileges with respect to the Assets of the Debtor's Estate, including the attorney-client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtor.

**C.** **Continued Existence.** The equity interests in Raynor Apopka Land Management LLC will be canceled on the Effective Date. Raynor Shine Services LLC shall continue to exist after the Effective Date as an LLC, with all of the powers of a for profit corporation under applicable law in the State of Florida and pursuant to its articles of organization and bylaws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date. On the Effective Date, title to the Assets shall vest in the Reorganized Debtor.

**D.** **Management of Raynor Shine Services, LLC Following the Effective Date.** On and after the Effective Date, the operation and management of the Reorganized Debtor, Raynor Shine Services, LLC, shall be the responsibility of Michael Dinkel, the Managing Member of Management and Joint Ventures, LLC and Mulch Properties, LLC, equity security holders of Raynor Shine Services LLC. From and after the Confirmation Date, Raynor Shine Services LLC shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

**E.** **Corporate Action.** All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the director(s) of the Debtor.

**F.** **Section 1146 Exemption.** The Plan provides that, pursuant to Section 1146(a) of the Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**G.** **Effectuating Documents; Further Transactions.** Each managing member of the Debtors or the Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

**H.** **Pursuit of Causes of Action.** On the Effective Date, the Causes of Action shall be vested in the Reorganized Debtor, Raynor Shine Services, LLC. The Reorganized Debtor will have the rights, powers and privileges, in its absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Bankruptcy Court. The Debtor is not currently in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. Any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTORS. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution by the Reorganized Debtor unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Debtor's Estate. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement; nor shall the Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

The Reorganized Debtor reserves the right to pursue any or none of the Causes of Action in its sole discretion.

**I.** **Exclusivity Period.** The Debtors retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## ARTICLE XII - PROVISIONS GOVERNING DISTRIBUTIONS

**A.** **Pro Rata Distribution**. Unless otherwise provided in the Plan, for any Class of Claims or Interests that is impaired, the holders of such Claims or Interests shall receive a Pro Rata Share of the property to be distributed to the Class under the Plan. If, and when, Contested Claims or Interests in any such Class become Disallowed Claims or Interest, the Pro Rata Share to which each holder of an Allowed Claim or Interest in such Class is entitled, shall increase commensurately. Accordingly, the Debtor, in its sole discretion, shall have the right to make or direct the making of subsequent interim distributions to the holders of Allowed Claims or Interests in such Class to reflect any increases in the Pro Rata Share. In any event, as soon as practicable after all Contested Claims or Interests in any Class receiving Pro Rata Shares have become either Allowed or Disallowed, a final distribution shall be made to the holders of Allowed Claims or Interests in such Class to account for any final adjustment in the Pro Rata Share of such holders.

**B.** **De Minimis Distributions**. Notwithstanding any other provision of the Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest. If the Plan contemplates multiple distributions then the distribution shall accrue, without interest, and will be distributed on account of the Allowed Claim or Interest if and when the amount to be distributed equals or exceeds $20.00.

**C.**   **Distribution Date**.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court the Distribution Date shall be 30 days after the Effective Date:

i)   Property to be distributed to an impaired Class under the Plan shall be distributed on the Distribution Date.  Distributions to be made on the Distribution Date shall be deemed made on the Distribution Date if made on the Distribution Date or as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Distribution Date.

ii)   Property to be distributed under the Plan to a Class that is not impaired shall be distributed on the latest of: (i) the Distribution Date; and (ii) the date on which the distribution to the holder of the Claim or Interest would have been made in the absence of the Plan.

**D.**   **Disbursing Agent**.  The Debtor or such disbursing agent as the Debtor may employ, in its sole discretion, shall make all distributions required under the Plan.

**E.**   **Cash Payments**.  Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

**F.**   **Delivery of Distributions**. Distributions and deliveries to holders of Allowed Claims and Interest shall be made at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor has been notified of a change of address).  If any distribution to a holder is returned as undeliverable, then no further distributions to such holder shall be made unless and until the Debtor is notified of the holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All Claims for undeliverable distributions shall be made on or before the fifth anniversary of the Distribution Date.  After such date, all unclaimed property shall revert to the Debtor, and the claim of any holder with respect to such property shall be discharged and forever barred.

**G.**   **Time Bar to Cash Payments**.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the fifth anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE XIII -- PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

**A.**   **Objection Deadline**.  Unless extended by the Bankruptcy Court, the Debtor shall file any objections to Claims or Interest no later than thirty (30) days after the Confirmation Date.

**B.**   **Prosecution of Objections**.  The Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Contested Claims or Interests.  All

professional fees and expenses incurred by the Debtor from and after the Confirmation Date, shall be paid in the ordinary course of business without further order of the Bankruptcy Court.

**C.**     **No Distributions Pending Allowances**.  No payments or distributions shall be made with respect to any Contested Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

**D.**     **Escrow of Allocated Distributions**.  The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims and Interest as of the Effective Date.  As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim or Interest.  The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made or such obligations arise.  If practicable, the Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

**E.**     **Distributions After Allowance**.  Payments and distributions from escrow to each holder of a Contested Claim or Interest, to the extent that such Claim or Interest ultimately becomes an Allowed Claim or Interest, shall be made in accordance with the provisions of the Plan governing the class of Claims or Interests to which the respective holder belongs.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim or Interest becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Contested Claim or Interest became an Allowed Claim or Interest shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim or Interest then been an Allowed Claim or Interest to the date such distributions are made.

**F.**     **Distributions After Disallowance**.  If any property withheld in escrow remains after all objections to Contested Claims or Interests of a particular class have been resolved, then such remaining property, to the extent attributable to the Contested Claims or Interests, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the class of Claims or Interests to which the Disallowed Claim or Interest belong.

## ARTICLE XIV - RETENTION OF JURISDICTION

**A.**     **General Retention.**  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Liquidation Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Liquidation Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**B.**     **Specific Purposes.**  In addition to the general retention of jurisdiction set forth in Article 12.1 of the Plan, after Confirmation of the Plan and until the Liquidation Case is closed,

the Bankruptcy Court shall retain jurisdiction of the Liquidation Case for the specific purposes set forth in Article XII. B. of the Plan.

## ARTICLE XV - CERTAIN FEDERAL INCOME TAX CONSEQUENCES

HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTERESTS (COLLECTIVELY, "HOLDERS") ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

THE DEBTORS' GENERAL BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.

PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. THE DEBTORS MAKE THE ABOVE-NOTED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS TO TAX ISSUES THEY MAY WISH TO CONSIDER. THE DEBTORS CANNOT AND DO NOT REPRESENT THAT THE TAX CONSEQUENCES MENTIONED ABOVE ARE COMPLETELY ACCURATE BECAUSE, AMONG OTHER THINGS, THE TAX LAW EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE ACCURATELY WHAT THE TAX IMPLICATIONS OF ANY ACTION MIGHT BE.

## ARTICLE XVI - VOTING ON AND CONFIRMATION OF THE PLAN

**A.** **Confirmation Without Acceptance by All Impaired Classes**.  If one or more of the Impaired Classes of Claims or Equity Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

**B.** **Discriminate Unfairly**. The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank.  The Debtor believes that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

**C.** **Fair and Equitable Standard**. The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims or interests before any junior class receives any distribution.  The Debtor believes the Plan is fair and equitable to all Classes pursuant to this standard.

With respect to the Impaired Class of Unsecured Claims, Bankruptcy Code Section 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder

of a claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the Holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest.

Accordingly, if necessary, the Debtor believes that the Plan meets the requirements for Confirmation by the Bankruptcy Court, notwithstanding the non-acceptance by an Impaired Class of Claims.

The Debtor intends to evaluate the results of the balloting and determine whether to seek Confirmation of the Plan in the event that less than all the Impaired Classes of Claims do not vote to accept the Plan. The determination as to whether to seek Confirmation under such circumstances will be announced before or at the Confirmation Hearing.

## ARTICLE XVII - ALTERNATIVES TO
## <u>CONFIRMATION AND CONSUMMATION OF THE PLAN</u>

If the Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11, (b) dismissal of the Liquidation Case, or (c) conversion of the Liquidation Case to a case under Chapter 7 of the Bankruptcy Code.

**A.**     **<u>Liquidation under Chapter 7</u>**.     If a plan is not confirmed, the Liquidation Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the Creditors of the Debtors in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtors believe that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) the inability to utilize the work product and knowledge of the Debtors and their Professionals; and (d) the substantial delay that would elapse before Creditors would receive any distribution in respect of their Claims.

## <u>ARTICLE XVIII - SUMMARY, RECOMMENDATION AND CONCLUSION</u>

The Debtors believe that the Plan is in the best interests of all Creditors. In the event of a liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code, the Debtors believe there would be no distribution to Unsecured Creditors. For these reasons, the Debtors believe that the Plan is in the best interests of all Creditors and urge that the Plan be accepted.

**RAYNOR SHINE SERVICES, LLC**

Dated:  08/20/2020                    By:  /s/ Michael Dinkel
                                                      Michael Dinkel, Managing Member of
                                                      Management and Joint Ventures, LLC and
                                                      Mulch Properties, LLC, equity security holders
                                                      of Raynor Shine Services, LLC

**RAYNOR APOPKA LAND MANAGEMENT, LLC**

Dated:  08/20/2020                    By:  /s/ Michael Dinkel
                                                      Michael Dinkel, Managing Member of
                                                      Management and Joint Ventures, LLC and
                                                      Mulch Properties, LLC, equity security holders
                                                      of Raynor Apopka Land Management, LLC

/s/ Frank M. Wolff
Frank M. Wolff, Esq.
Florida Bar No. 319521
fwolff@lathlamluna.com
bknotice1@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Tel: (407) 481-5800
Fax: (407) 481-5801

Attorneys for Debtors and Debtors in Possession

# EXHIBIT A

# <u>PROJECTIONS</u>

# Raynor Shine Services, LLC
## Pro forma Financial Performance
*2021 through 2025*

| | Q4 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|---|---|
| 1 | **BEGINNING CASH BALANCE** | $1,150,243 | $1,503,565 | $1,826,585 | $2,249,605 | $2,672,625 | $3,095,644 | $1,150,243 |
| 2 | | | | | | | | |
| 3 | **CASH RECEIPTS** | $2,480,150 | $9,613,350 | $9,613,350 | $9,613,350 | $9,613,350 | $9,613,350 | $50,546,900 |
| 4 | **CASH DISBURSEMENTS** | | | | | | | |
| 5 | Cost of Goods Sold *(Non-personnel)* | ($502,900) | ($1,639,250) | (1,639,250) | (1,639,250) | (1,639,250) | (1,639,250) | (8,699,150) |
| 6 | Personnel Expense | (774,180) | (3,332,662) | (3,732,662) | (3,732,662) | (3,732,662) | (3,732,662) | (19,037,489) |
| 7 | Equipment Lease Payments | (164,359) | (1,793,840) | (1,793,840) | (1,793,840) | (1,793,840) | (1,793,840) | (9,133,557) |
| 8 | Other Operating Expenses | ($83,595) | (741,156) | (741,156) | (741,156) | (741,156) | (741,156) | (3,789,373) |
| 9 | Property & Tangible Personal Property Taxes | ($50,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (550,000) |
| 10 | Insurance- Business, Vehicles, and D&O | (131,289) | (504,000) | (504,000) | (504,000) | (504,000) | (504,000) | (2,651,289) |
| 11 | Major Repair Costs | (183,000) | 0 | 0 | 0 | 0 | 0 | (183,000) |
| 12 | Professional Fees | (20,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (270,000) |
| 13 | Intentionally left blank | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 14 | Equipment Financing Fees & Costs | 0 | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (12,500) |
| 15 | US Trustee Fees | (17,505) | 0 | 0 | 0 | 0 | 0 | (17,505) |
| 16 | **TOTAL DISBURSEMENTS** | **($1,926,828)** | **($8,163,407)** | **($8,563,407)** | **($8,563,407)** | **($8,563,407)** | **($8,563,407)** | **($44,343,863)** |
| 17 | Cash Generation- Operating | $553,322 | $1,449,943 | $1,049,943 | $1,049,943 | $1,049,943 | $1,049,943 | $6,203,037 |
| 18 | PP&E Replacement Reserve | ($150,000) | ($225,000) | ($225,000) | ($225,000) | ($225,000) | ($225,000) | (1,275,000) |
| 19 | IRS Payments | 0 | (299,532) | (299,532) | (299,532) | (299,532) | (299,532) | (1,497,660) |
| 20 | Plan Payments | (50,000) | (500,000) | 0 | 0 | 0 | 0 | (550,000) |
| 21 | PPP Loan Repayment (Assumes 50% forgiveness) | | (102,391) | (102,391) | (102,391) | (102,391) | (102,391) | (511,956) |
| 22 | Net Cash Generation | $353,322 | $323,020 | $423,020 | $423,020 | $423,020 | $423,020 | $2,368,421 |
| 23 | ENDING CASH | **$1,503,565** | **$1,826,585** | **$2,249,605** | **$2,672,625** | **$3,095,644** | **$3,518,664** | **$3,518,664** |
| 24 | | | | | | | | |

*Note: Excludes factoring and factoring fees.*

# <u>EXHIBIT B</u>

# <u>PLAN OF REORGANIZATION</u>

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **RAYNOR SHINE SERVICES, LLC** | ) | **Case no. 6:20-bk-00577-LVV** |
| | ) | |
| **RAYNOR APOPKA LAND** | ) | **Case no. 6:20-bk-00578-LVV** |
| **MANAGEMENT, LLC** | ) | |
| | ) | *Jointly Administered with* |
| **Debtors.** | ) | **Case no. 6:20-bk-00577-LVV** |
| _____ | ) | |

**JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11**
**OF THE UNITED STATES BANKRUPTCY CODE FOR RAYNOR**
**SHINE SERVICES, LLC AND RAYNOR APOPKA LAND MANAGEMENT, LLC**

**August 26, 2020**

/s/ Frank M. Wolff
Frank M. Wolff, Esq.
Florida Bar No. 319521
fwolff@lathlamluna.com
bknotice1@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Tel: (407) 481-5800
Fax: (407) 481-5801

Attorneys for Debtors and Debtors in Possession

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN CONDITIONALLY OR FINALLY APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTORS' HISTORY, BUSINESS, PROPERTIES, AND OPERATIONS, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# INTRODUCTION

RAYNOR SHINE SERVICES, LLC and RAYNOR APOPKA LAND MANAGEMENT, LLC (collectively, the "**Debtors**"), as Debtors and Debtors in Possession in the Chapter 11 Case, propose this plan (the "**Plan**," as more particularly defined below) for the reorganization of the Debtors and the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and request confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. The Plan provides for the payment of Claims in accordance with Article IV hereof. The distributions under the Plan will be funded by the sale of the real estate of RAYNOR APOPKA LAND MANAGEMENT, LLC and the refinance and sale of equipment of RAYNOR SHINE SERVICES, LLC.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtors' Joint Disclosure Statement for Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code for RAYNOR SHINE SERVICES, LLC and RAYNOR APOPKA LAND MANAGEMENT, LLC (the "**Disclosure Statement,**" as more particularly defined below) has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Debtors' Disclosure Statement was conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, which is being distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, business, property, and operations, (b) a summary of significant events which have occurred to date in the Chapter 11 Case; (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. Other than the Disclosure Statement and any exhibits and schedules and documents attached thereto or referenced therein, no materials have been approved by the Debtors for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions or modifications set forth in Article X hereof, the Debtors expressly reserve the right to alter, further amend, further modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' OPERATIONS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ALL PERSONS OR ENTITIES SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE I – DEFINITIONS - INTERPRETATION

**A.**    **Definitions**.  For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise.  All of the definitions set forth in Section 101 of the Bankruptcy Code are incorporated herein as though set forth herein in their entirety. If a defined term contained herein is inconsistent with the definition set forth in Section 101 of the Bankruptcy Code, the defined term set forth herein shall be superseded by the definition set forth in Section 101.

1.    ***Administrative Expense*** shall mean a cost or expense of administration of the Chapter 11 Case allowed under §§503(b) and 507(a)(2) of the Bankruptcy Code.

2.    ***Allowed*** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order; (b) allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

3.    ***Bankruptcy Code*** shall mean 11 U.S.C. §101 et seq., and any amendments thereto.

4.    ***Bankruptcy Court*** shall mean the United States Bankruptcy Court, Middle District of Florida, Orlando Division, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

5.    ***Bankruptcy Rules*** mean the Federal Rules of Bankruptcy Procedure, as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended.

6.    ***Bar Date*** shall mean the date fixed by order of the Bankruptcy Court by which a proof of Claim or Interest must be filed against the Debtor.

7.    ***Chapter 11 Case*** shall mean the above referenced Chapter 11 reorganization case of the Debtors pending in the Bankruptcy Court.

8.    ***Claim*** shall mean, as defined in §101(5) of the Bankruptcy Code:  (a) any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from

the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

9.      ***Class*** means a group of Claims of Interests substantially similar to each other as classified under this Plan.

10.     ***Confirmation Date*** shall mean the date of entry of the Confirmation Order.

11.     ***Confirmation Order*** shall mean the order entered by the Bankruptcy Court confirming the Plan.

12.     ***Contested*** when used with respect to a Claim or Interest, shall mean a Claim or Interest that is not an Allowed Claim or Interest.

13.     ***Disallowed*** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent 10 days has expired since it has been disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such 10 day period, in which case the Claim or Interest shall be disallowed 30 days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

14.     ***Disclosure Statement*** means the disclosure statement of the same date as this Plan that was filed by the Debtors and approved by the Bankruptcy Court pursuant to Bankruptcy Code Section 1125 and any amendments thereto, including all exhibits.

15.     ***Distribution Date*** when used with respect to each Claim or Interest shall mean as soon as practicable after the later of (a) 30 days after the Effective Date, or (b) the first Business Day of the next calendar month after the date upon which the Claim or Interest becomes an Allowed Claim or Interest, unless the Claim or Interest becomes an Allowed Claim or Interest within fifteen days before the first Business Day of the next calendar month, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar month.

16.     ***Effective Date*** shall mean: (a) if no stay of the Confirmation Order is in effect, then the date which is a Business Day selected by the Debtors which is not more than  thirty (30) days following the date of the Confirmation Order; or (b) if a stay of the Confirmation Order is in effect, then the date which is a Business Day selected by the Debtors which is not more than thirty (30) days following the date the stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reverse or materially modify the Confirmation Order.

17.     ***Final Order*** means an order of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with applicable law.

18.     ***Interest*** means the equity interests in the Debtor.

19.     ***Objection Deadline*** means the date by which objections to Claims and Interests must be filed with the Bankruptcy Court, which shall be 30 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

20.    ***Other Secured Claims*** means any Secured Claim except the Secured Claims separately classified under the Plan.

21.    ***Petition Date*** shall mean January 30, 2020, the date on which the petition for relief was filed in the Chapter 11 case.

22.    ***Plan*** shall mean this Chapter 11 plan, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

23.    ***Priority Non-Tax Claim*** shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.

24.    ***Priority Tax Claim*** shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

25.    ***Pro Rata Share*** means the ratio that the amount of a particular Allowed Claim or Interest bears to the total amount of Allowed Claims or Interests of the same class, including Contested Claims or Interests, but not including Disallowed Claims or Interests, as calculated by the Debtor as of the Distribution Date.

26.    ***Secured Claim*** shall mean a Claim secured by a lien against property in which the Debtors have an interest, or which is subject to setoff under §553 of the Bankruptcy Code to the extent of the value (determined in accordance with §506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amounts subject to such setoff, as the case may be.

27.    ***Unsecured Claim*** means a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, or a Secured Claim.

**B.**    **Bankruptcy Code Definitions**.  Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan.  The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

**C.**    **Interpretation**.  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

## ARTICLE II - CONTROLLING LAW AND RULES OF CONSTRUCTION

**A.**    **Reference to Bankruptcy Code and Bankruptcy Rules**.  Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  In the instance of a conflict or ambiguity, the Bankruptcy Code or the Bankruptcy Rules, as applicable, will control.

**B.**    **Rules of Construction**. For purposes of the Plan, the following rules of construction will apply:

1.    Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural.

2.    Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document will be substantially in such form or substantially on such terms and conditions.

3.    Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been or may be amended, modified or supplemented.

4.    If the description in the Plan of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit will control.

5.    Unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan.

6.    Unless the context requires otherwise, the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular article or section or subsection of the Plan.

7.    Any phrase containing the term "include" or "including" will mean including without limitation.

8.    All of the Exhibits referred to in the Plan will be deemed incorporated herein by such reference and made a part hereof for all purposes.

9.    Any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns.

## ARTICLE III - TREATMENT OF
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.**    **Nonclassification**.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified in the Plan.  The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article III.

**B.**    **Administrative Expenses**. Except as otherwise provided in the Plan, each Holder of an Allowed Administrative Expense will be paid (a) on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense and the Debtors or Reorganized Debtors, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

C.      **Fees and Charges**. All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid on or before the Effective Date.

D.      **Applications for Allowance of Administrative Expenses**. Except as provided herein, all Holders of Administrative Expenses (including Holders of any Claims for non-ad valorem post-petition federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Bar Date will be forever barred from asserting such Administrative Expense against the Debtors, the Reorganized Debtors, or any of their respective Properties.

## ARTICLE IV – DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

A.      **In General.**    Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims. A Claim is classified (a) in a particular Class only to the extent the Claim qualifies within the description of that Class and (b) in a different Class to the extent the Claim qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.

B.      **Unimpaired**.    For purposes of this Plan, the following Classes of Claims are unimpaired:

*Class 1 – Allowed Other Secured Claims*.  This class consists of Secured Claims not otherwise classified under the Plan, including Claims secured by security deposits held by utilities.

*Class 2 - Allowed Non-Tax Priority Claims*.  This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses.  Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims 30 days after the Effective Date.  The Debtor believes that there is only one creditor in this class and that is VFS for the agreed amount of their collateral from the Petition date until VFS regained possession of its collateral.

*Class 20 - Allowed Claim of Fifth Third Bank*.  This Class consists of the Payroll Protection Plan loan made by Fifth Third Bank.  This claim is a post-petition loan, and therefore an administrative claim.  However, the holder of this claim has agreed to a different treatment of its claim as provided in §1129(a)(9) in the form of a promissory note, and will be paid on the terms of the note with no modification.  Accordingly, this Claim is not impaired by the Plan.

*Class 21 – Allowed Claim of Commercial Funding, Inc*.  The holder of this claim was the factor utilized in this case under a court authorized DIP financing program.  The holder of this claim shall retain its rights in the collateral described in its loan agreement and will be paid according to its contract terms.

C.    **Impaired**.  For purposes of this Plan, the following Claims are impaired:

1.    Class 3 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of BB&T Equipment Finance Corp. with regard to 2018 Diamond Z DZT1564B Tub Grinder VIN 1R9FX4632HC722218 with Caterpillar C32 Mobil Generator, VIN 5SLBG1521CL010988.

2.    Class 4 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of BB&T Equipment Finance Corp. with regard to (3) 2018 McCloskey 733RE Trommel Screens, 1/2" Screen Mesh installed in Screen Drums; (5) 2018 McCloskey ST00 Radial Stacking Conveyors 35"x100' Road Towable and Hopper Extensions; 2018 Mack CHU613 Truck, s/n 1M1AN07Y3JM028287.

3.    Class 5 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of Truist Bank (f/k/a Branch Banking & Trust Co.) with regard to loan ending 0002.

4.    Class 6 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of Truist Bank (f/k/a Branch Banking & Trust Co.) with regard to loan ending 0007.

5.    Class 7 is comprised of the Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of Truist Bank (f/k/a Branch Banking & Trust Co.) with regard to loan ending 9005.

6.    Class 8 is comprised of the Allowed Secured Claim of Caterpillar Financial Services (CAT):

    a.    Class 8a for Financed Equipment; and

    b.    Class 8b for Leased Equipment.

7.    Class 9 is comprised of the Allowed Secured Claim of Komatsu Financial Limited Partnership:

    a.    Class 9a for Financed Equipment; and

    b.    Class 9b for Leased Equipment.

8.    Class 10 is comprised of the Allowed Secured Claim of Hanmi Bank with regard to Leased Equipment.

9.    Class 11 is comprised of the Allowed Secured Claim of VFS US Leasing, LLC with regard to Leased Equipment.

10.    Class 12 is comprised of the Allowed Secured Claim of Chromoscape, Inc.

11.    Class 13 is comprised of the Allowed Secured Claim of Brad Dinkel.

12.     Class 14 is comprised of the Allowed Secured Claim of Engage4Fun, LLC.

13.     Class 15 is comprised of the Allowed Secured Claim of Optimal Equipment Maintenance, LLC.

14.     Class 16 is comprised of all Allowed General Unsecured Claims greater than $1,500.

15.     Class 17 is comprised of all Allowed General Unsecured Claims of $1,500 or less.

16.     Class 18 is comprised of all Allowed Insider Unsecured Claims.

17.     Class 19 is comprised of all Equity Interests.

## ARTICLE V – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**A.     In General**.  Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article V.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever.

**B.     Unimpaired**.  For purposes of this Plan, the following Classes of Claims are unimpaired, and the Plan does not alter the legal, equitable, or contractual rights of such Claims:

*Class 1 – Allowed Other Secured Claims*.  This class consists of Secured Claims not otherwise classified under the Plan, including Claims secured by security deposits held by utilities.

*Class 2 - Allowed Non-Tax Priority Claims*.  This Class consists of Claims entitled to priority under Code sections 507(a)(1)-(7), except Administrative Expenses.  Holders of such Claims shall receive on account of such Claims, cash in the amount of such Claims.  Holders of such claims shall receive on account of such Claims, cash in the amount of such Claims.

*Class 20 - Allowed Claim of Fifth Third Bank*.  This Class consists of the Payroll Protection Plan loan made by Fifth Third Bank.  This claim is a post-petition loan, and therefore an administrative claim.  However, the holder of this claim has agreed to a different treatment of its claim as provided in § 1129(a)(9) in the form of a promissory note, and will be paid on the terms of the note with no modification.  Accordingly, this Claim is not impaired by the Plan.

*Class 21 – Allowed Claim of Commercial Funding, Inc*.  The holder of this claim was the factor utilized in this case under a court authorized DIP financing program.  The holder of this claim shall retain its rights in the collateral described in its loan agreement and will be paid according to its contract terms.

    **C.**    **Impaired**.  For purposes of this Plan, the following Claims are impaired:

    1.    *Classes 3, 4, 5, 6 and 7 - Allowed Secured Claim of SummitBridge National Investments VII LLC as successor in interest of BB&T Equipment Finance Corp and Truist Bank ("Summit")*.   Holder of the Allowed Claim in Classes 3,  4, 5, 6 and 7:

    a.    will receive 30 on the Distribution Date a payment of $4,000,000; and

    b.    will receive a promissory note (the "Promissory Note") in the amount of $100,000 payable over 12 months at 5% interest, with the first payment due on the first anniversary date of the Effective Date and equal monthly payments on the same day for the following 11 months.  The form of the Promissory Note is attached as Exhibit A;

    c.    Summit will release its lien on the real estate owned by RAYNOR APOPKA LAND MANAGEMENT, LLC, the legal description of which is attached hereto as Exhibit B.

    d.    Summit will retain its lien on the equipment and vehicles listed on Exhibit C (the Equipment for Sale);

    e.    Summit will release its lien on the equipment listed on Exhibit D (the Refinanced Equipment) ; and

    f.    Summit will receive an unsecured claim in the amount equal to the amount of the difference between claims 41-2, 42-2, and 43-2  and the sum of $4,000,000, the Promissory Note and the net proceeds from the sale of Equipment for Sale.

    2.    *Class 8 - Allowed Secured Claims of Caterpillar Financial Services (CAT)* as follows:

    a.    *Class 8a - Financed Equipment* comprised of:

    i.    Ford F550 Mechanics truck VIN 1FDUF5HT6BEB25534. Holder of such claim will:

    (1)    Retain the lien securing the Claim in the amount of $20,000 for the Allowed Amount of the Claim.

    (2)    Receive on account of its Allowed Secured Claim $20,000 in equal monthly cash payments over five years at 2.99% interest beginning on the Distribution Date.

    ii.    Ford F550 Mechanics truck VIN 1FDUF5GT4CEB2330. Holder of such claim will:

    (1)    retain the lien securing the Claim to the extent of the Allowed Amount of the Claim.

    (2)    Receive on account its Allowed Secured Claim

$20,000 in equal monthly cash payments over five years at 2.99% interest beginning on the Distribution Date.

   b. ***Class 8b - Leased Equipment***. These leases have been rejected and all Leased Equipment has been returned to CAT.  If there is any Allowed Claim for lease rejection damages, such claim will be treated as a Class 16 Allowed General Unsecured Claim.

   3. ***Class 9 - Allowed Secured Claims of Komatsu Financial Limited Partnership (Komatsu)*** as follows:

   a. ***Class 9a - Financed Equipment*** comprised of:

    i. Komatsu PC210LC-11 Hydraulic Excavator, S/N A1243. This equipment has been surrendered to Komatsu.

    ii. Komatsu WA200-8 Wheel Loader, S/N 85056 and Komatsu WA200-8 Wheel Loader, S/N 85024.  The Holder of such Claim will:

     (1) Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim.

     (2) Receive on account of account of the Allowed Secured Claim $7,329.12 monthly adequate protection payments through the remainder of the existing finance agreement.

   b. ***Class 9b - Leased Equipment*** comprised of:

    i. (Lease 003)  Komatsu PC210LC-11 Hydraulic Excavator, S/N 500363.  This lease has been rejected and this equipment has been returned to Komatsu.  If there is any Allowed Claim for lease rejection damages, such claim will be treated as a Class 16 Allowed General Unsecured Claim.

    ii. (Lease 000) Komatsu PC210LC-11 Hydraulic Excavator, S/N 500276; (Lease 001) Komatsu WA270-7 Wheel Loader, S/N 81296.  (Lease 004) Komatsu WA270-7 Wheel Loader, S/N 81299.  The Holder of such Claim will:

     (1) Receive $15,000 on the Effective Date; and

     (2) Receive a promissory note secured by this equipment in the amount of $312,046.42 at 2.99% interest, payable in 36 monthly payments of $9079 beginning on the Distribution Date.

    iii. (Lease 007) Power Screen Terex Phoenix/Trommel Crusher, S/N TRX00178CDGGB3306.  The Holder of such Claim will:

     (1) Retain the lien securing the Claim to the extent of

the Allowed Amount of the Claim.

(2)    Receive payment of $44,893.08 to cure the lease arrearage, to be paid 30 days after the Effective Date ; and

(3)    Receive monthly rent payment of $6,123.45, commencing May, 2020, through the remaining life of the lease.

8.    ***Class 10 - Allowed Secured Claim of Hanmi Bank*** with regard to the lease of 2017 Mack Grapple Truck GU813, VIN 1M2AX16C1HMO38070.  The Holder of such claim will:

a.    Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim;

b.    Receive payment of $8,332.50 to cure the lease arrearage, to be paid on the Distribution Date; and

c.    Receive monthly rent payments of $3,982.08 through the remaining life of the Lease.

9.    ***Class 11 - Allowed Secured Claim of VFS US Leasing, LLC (VFS)*** with regard to the lease of:

a.    Mack CHU613 Truck VIN 1M1AN09Y7JM026975; Mack CHU613 Truck VIN 1M1AN07Y6JM028042; and Mack CHU613 Truck VIN 1M1AN07YXJM027024.  The Lease for this equipment has been rejected and the equipment has been returned to VFS.  If there is any Allowed Claim for lease rejection damages, such claim will be treated as a Class 16 Allowed General Unsecured Claim.

b.    2017 Mack GU813, S/N: 1M2AX16C3HM038071; 2017 Robotec Elite 910 Grappler S/N 131257-19-1.  The Holder of this Claim will:

(i)    Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim;

(ii)    Receive payment of $8,005 to cure the lease arrearage, to be paid on the Distribution Date; and

(iii)    Receive monthly rent payments of $4,240.91 through the remaining life of the Lease.

c.    2081 Mack GU813, S/N 1M2AX16C3HM038068 with 2017 Robotec Elite 910 Grappler & Dump 2017; Mack GU813, S/N 1M2AX16C1HM038069 with 2017 Robotec Elite 910 Grappler & Dump.  The Holder of this claim will:

(i)    Retain the lien securing the Claim to the extent of the Allowed Amount of the Claim;

(ii)    Receive payment of $18,352 to cure the lease arrearage, to be paid on the Distribution Date; and

(iii)    Receive monthly rent payments of $8,404.41 through the remaining life of the Lease.

10.    ***Class 12 - Allowed Secured Claim of Chromoscape, Inc***. for an Amerimulch ColorTrom 300 Coloring System.  The Debtor has filed an objection to this claim, and believes this claim will be disallowed in full.

11.    ***Class 13 - the Secured Claim of Brad Dinkel***.   The Debtor has filed an objection to this claim, and believes this claim will be disallowed in full.

12.    ***Class 14 - Allowed Secured Claim of Engage4Fun, LLC*** for the following equipment:

John Deere 644K/ Wheel Loader, VIN 1DW644KZJEF665656
John Deere 644K/ Wheel Loader, VIN 1DW644ZHEF664630
John Deere 644K/ Wheel Loader VIN 1DW644KZ2HF666735
John Deere 644K/ Wheel Loader VIN 1DW644KZHEF665468

The Holder of this claim will receive a cash payment on the Distribution Date in an amount equal to $375,000.

13.    C***lass 15 – Allowed Secured Claim of Optimal Equipment Maintenance, LLC***.  Class 15 is comprised of a mechanic's lien on the Debtors' 2015 Peterbilt 567, VIN 1XPCDP9XXFD307525.The Holder of this claim will be paid the amount of $11,000 on the Distribution Date.

14.    ***Class 16 - Allowed General Unsecured Claims greater than $1,500***.  Class 16 is comprised of all Allowed General Unsecured Claims greater than $1,500.  The holders of such Claims shall receive on account of such Claims a Pro Rata Share of the lesser of: (i) the amount of Allowed General Unsecured Claims greater than $1,500; and (ii) a pro rata share of $600,000 which shall be paid $100,000 on the Distribution  Date and their pro rata share in 10 equal monthly installments totaling $500,000 beginning on the 60th day after the Effective Date.

15.    ***Class 17 – Allowed General Unsecured Claims of $1,500 or less***.  Class 17 is comprised of Allowed General Unsecured Claims of $1,500 or less.  All unsecured creditors whose claims are $1,500 or less or who agree to reduce their claims to $1,500 shall be paid in full on the Distribution Date.

16.    ***Class 18 - Allowed Insider Unsecured Claims***.  Class 18 is comprised of all Insider Unsecured Claims.  Allowed Insider Unsecured Claims shall not receive any distributions under the Plan.  Class 18 is Impaired and is entitled to vote to accept or reject the Plan.

17.    ***Class 19 - Equity Interests***.  Class 19 is comprised of all Equity Interests in the Debtors.    The interests in Raynor Apopka Estate Management LLC shall be cancelled.  The Holder of Interests in Raynor Shine Services,  LLC shall retain their interests after confirmation.

**D.    Allowed Priority Tax Claims**.  Such Claims consist of Unsecured Claims of governmental units for taxes allowed under Bankruptcy Code §507(a)(8).  The holders of Allowed Priority Tax Claims will be paid:

1.    Principal equal to the amount of the Allowed Priority Tax Claims.

2.    Interest at a rate equal to the rate determined under applicable non-bankruptcy law.  The rate will be determined as of the calendar month in which the Plan is confirmed.

3.    equal monthly payments of principal and interest commencing 30 days after the Effective Date and on the same date of each month thereafter over a period not exceeding five (5) years following the Petition Date.

**E.    Allowed Administrative Claims**.  Except to the extent otherwise specified in the Plan, each holder of an Allowed Administrative Expense against the Debtor shall receive on account of such Claim, the amount of such holder's Allowed Expense in one cash payment on the Distribution Date, or shall receive such other treatment as agreed upon in writing by the Debtor and such holder; provided that an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business by the Debtor.

**F.    Impairment/Classification Controversies**.  If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

## ARTICLE VI – TAX TREATMENT

**A.    Section 1146 Exemption**.  Pursuant to Section 1146(a) of the Code, the issuance, transfer or exchange of any security under this Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, this Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, this Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**B.**     **Determination of Taxes**.  Debtors and the Reorganized Debtors are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any and all tax returns filed for, nor or behalf of, the Debtors for any and all taxable period (or portions thereof) through the Effective Date.

## ARTICLE VII -- EXECUTORY CONTRACTS AND UNEXPIRED LEASES

In addition to executory contracts and unexpired leases previously assumed or rejected by the Debtor pursuant to Final Order of the Bankruptcy Court, the Plan constitutes and incorporates any motion by the Debtor to:

**A.**     **Assume**.  Debtor will assume the following executory contracts and unexpired leases:

| Name | Contract/Lease |
| --- | --- |
| Ocoee Lease | Lease of nonresidential property located at 850 Ocoee-Apopka Road, Ocoee, FL |

**B.**     **Reject**.  Debtor shall reject all executory contracts and unexpired leases not listed in subparagraph A. or assumed pursuant to Final Order of the Bankruptcy Court.  If an executory contract or unexpired lease is rejected, then the other party to the agreement may file a claim for damages incurred by reason of rejection within such time as the bankruptcy court may allow.  In the case of rejection of employment agreements and leases of real property, damages are limited under the Bankruptcy Code.

## ARTICLE VIII -- ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

**A.**     **Classes Entitled to Vote**.  Each impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.  Any unimpaired Class of Claims or Interests shall not be entitled to vote to accept or reject the Plan.

**B.**     **Class Acceptance Requirement**.  A Class of Claims shall have accepted the Plan if it is accepted by at least two thirds in amount and more than one-half in number of the Allowed Claims of such class that had voted on the Plan.  A Class of Interests shall have accepted the plan if it is accepted by at least two thirds in amount of the Allowed Interests of such Class that had voted on the Plan.  If any ballot is executed and timely filed by the holder of an Allowed Claim or Interest but does not indicate acceptance or rejection of the Plan, then the ballot shall be deemed to be an acceptance.

**C.**     **Cramdown**.  If any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with Bankruptcy Code §1129(a), then the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code §1129(b).

## ARTICLE IX -- MEANS OF IMPLEMENTATION OF THE PLAN

**A.        General Overview of the Plan**. The distributions under the Plan will be funded principally by  the sale or refinancing of the Debtors' equipment and the sale of the Debtors' real estate.

**B.        Sale of real estate**.  Upon the entry of an order confirming the plan, the Real Estate described in Exhibit B attached hereto shall be sold free and clear of all claims and interests.  All parties who have an interest in the Property would be subject to a loss of their lien under non bankruptcy law through foreclosure, are in bona fide dispute, and could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest.

**C.        Refinance of Equipment.**    Upon notice and hearing the Equipment listed on Exhibit D shall be refinanced through a loan and security agreement that will close on the Effective Date.  The Lender shall receive a first lien on the Refinanced Equipment.

**D.        Sale of Equipment**.  The Equipment listed on Exhibit C shall be  sold in the open market by private sale after notice and hearing, and the proceeds used to fund the make the payments on the Summit promissory note.  Any equipment not sold by private sale by January 2021 shall be sold at auction in February of 2021.

**E.        Continued Existence**.  The equity interests in Raynor Apopka Land Management LLC  will be canceled on the Effective Date.  Raynor Shine Services LLC  shall continue to exist after the Effective Date as an LLC, with all of the powers of a for profit corporation under applicable law in the State of Florida and pursuant to its articles of organization and bylaws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date. On the Effective Date, title to the Assets shall vest in the Reorganized Debtor.

**F.        Restated Articles of Organization**.  The articles of organization and operating agreement of Raynor Shine Services LLC shall be amended as necessary to satisfy the provisions of the Plan and Bankruptcy Code.

**G.        Revesting of Assets**.  The property of the estate of Raynor Shine Services LLC shall revest in the Debtor on the Effective Date, except as otherwise provided in the Plan.  On and after the Effective Date, Raynor Shine Services LLC may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code.  As of the Effective Date, all property of Raynor Shine Services LLC shall be free and clear of all Claims and Interests, except as specifically provided in the Plan. As of the Effective Date, the Reorganized Debtor shall be responsible for the operation of the business, the management of the Assets, the pursuit of Causes of Action, the payment of Allowed Clams, and such other duties imposed by the Plan and the Confirmation Order. All privileges with respect to the Assets of the Debtor's Estate, including the attorney-client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtor.

**H.**     **Management of Raynor Shine Services LLC Following the Effective Date**. On and after the Effective Date, the operation and management of the Reorganized Debtor shall be the responsibility of Michael Dinkel, the Managing Member of Management and Joint Ventures, LLC and Mulch Properties, LLC, equity security holders of Raynor Shine Services LLC.   From and after the Confirmation Date, Raynor Shine Services LLC shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

**I.**     **Corporate Action**. All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of the Debtors.

**J.**     **Assumption of Liabilities**.  The liability for and obligation to make the distributions required under the Plan, shall be assumed by the Debtor which shall have the liability for and obligation to make all distributions of property under the Plan.

**K.**     **Avoidance Actions**.  Causes of action assertable by Raynor Shine Services LLC pursuant to Bankruptcy Code §§542, 543, 544, 545, 547, 548, 549, 550, or 553 shall, except as otherwise provided in the Plan, be retained by the Debtor.  Any net recovery realized by a Debtor on account of such causes of action, shall be the property of the Debtor.

**L.**     **Exclusivity Period**. The Debtors retains the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## ARTICLE X -- PROVISIONS GOVERNING DISTRIBUTION

**A.**     **Pro Rata Distribution**.  Unless otherwise provided in the Plan, for any Class of Claims or Interests that is impaired, the holders of such Claims or Interests shall receive a Pro Rata Share of the property to be distributed to the Class under the Plan.  If, and when, Contested Claims or Interests in any such Class become Disallowed Claims or Interest, the Pro Rata Share to which each holder of an Allowed Claim or Interest in such Class is entitled, shall increase commensurately.  Accordingly, the Debtor, in its sole discretion, shall have the right to make or direct the making of subsequent interim distributions to the holders of Allowed Claims or Interests in such Class to reflect any increases in the Pro Rata Share.  In any event, as soon as practicable after all Contested Claims or Interests in any Class receiving Pro Rata Shares have become either Allowed or Disallowed, a final distribution shall be made to the holders of Allowed Claims or Interests in such Class to account for any final adjustment in the Pro Rata Share of such holders.

**B.**     **De Minimis Distributions**.  Notwithstanding any other provision of the Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest.  If the Plan contemplates multiple distributions then the distribution shall accrue, without interest, and will be distributed on account of the Allowed Claim or Interest if and when the amount to be distributed equals or exceeds $20.00.

**C.**    **Distribution Date**.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court the Distribution Date shall be 30 days after the Effective Date:

i)    Property to be distributed to an impaired Class under the Plan shall be distributed on the Distribution Date.  Distributions to be made on the Distribution Date shall be deemed made on the Distribution Date if made on the Distribution Date or as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Distribution Date.

ii)    Property to be distributed under the Plan to a Class that is not impaired shall be distributed on the latest of: (i) the Distribution Date; and (ii) the date on which the distribution to the holder of the Claim or Interest would have been made in the absence of the Plan.

**D.**    **Disbursing Agent**.  The Debtor or such disbursing agent as the Debtor may employ, in its sole discretion, shall make all distributions required under the Plan.

**E.**    **Cash Payments**.  Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

**F.**    **Delivery of Distributions**.  Distributions and deliveries to holders of Allowed Claims and Interest shall be made at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor has been notified of a change of address).  If any distribution to a holder is returned as undeliverable, then no further distributions to such holder shall be made unless and until the Debtor is notified of the holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All Claims for undeliverable distributions shall be made on or before the fifth anniversary of the Distribution Date.  After such date, all unclaimed property shall revert to the Debtor, and the claim of any holder with respect to such property shall be discharged and forever barred.

**G.**    **Time Bar to Cash Payments**.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the fifth anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred.

### ARTICLE XI -- PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

**A.**    **Objection Deadline**.  Unless extended by the Bankruptcy Court, the Debtor shall file any objections to Claims or Interest no later than thirty (30) days after the Confirmation Date.

**B.** **Prosecution of Objections**. The Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Contested Claims or Interests. All professional fees and expenses incurred by the Debtor from and after the Confirmation Date, shall be paid in the ordinary course of business without further order of the Bankruptcy Court.

**C.** **No Distributions Pending Allowances**. No payments or distributions shall be made with respect to any Contested Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

**D.** **Escrow of Allocated Distributions**. The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims and Interest as of the Effective Date. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim or Interest. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made or such obligations arise. If practicable, the Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

**E.** **Distributions After Allowance**. Payments and distributions from escrow to each holder of a Contested Claim or Interest, to the extent that such Claim or Interest ultimately becomes an Allowed Claim or Interest, shall be made in accordance with the provisions of the Plan governing the class of Claims or Interests to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim or Interest becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Contested Claim or Interest became an Allowed Claim or Interest shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim or Interest then been an Allowed Claim or Interest to the date such distributions are made.

**F.** **Distributions After Disallowance**. If any property withheld in escrow remains after all objections to Contested Claims or Interests of a particular class have been resolved, then such remaining property, to the extent attributable to the Contested Claims or Interests, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the class of Claims or Interests to which the Disallowed Claim or Interest belong.

## ARTICLE XII -- RETENTION OF JURISDICTION

**A.** **General Retention**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Chapter 11 Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**B.    Specific Purposes**. After Confirmation of the Plan and until the Chapter 11 Case is closed, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case for the following specific purposes:

1.    To resolve any outstanding contested matters or adversaries not yet resolved by Confirmation, including but not limited to the matters involving Agrifos LLC and Unique Deals LLC.

2.    to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims;

3.    to determine any and all cases, controversies, suits or disputes arising under or relating to the Chapter 11 Case, the Plan or the Confirmation Order;

4.    to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Chapter 11 Case;

5.    to enforce, interpret and administer the terms and provisions of the Plan;

6.    to modify any provisions of the Plan to the fullest extent  permitted by the Bankruptcy Code and the Bankruptcy Rules;

7.    to consider and act on the compromise and settlement of any Claim against the Debtor or the Estate;

8.    to assure the performance by the Debtor or the Reorganized Debtor of their obligations under the Plan, including disposition of proceeds of the sale of the Auction Properties and the Remaining Properties as contemplated by the Sale Procedures Order and this Plan;

9.    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

10.    to enforce all orders, judgments, injunctions and rulings entered in connection with the Chapter 11 Case;

11.    to review and approve any sale or transfer of assets or Property by the Debtor or the Reorganized Debtor as applicable, including prior to or after the date of the Plan and including all sales contemplated by the Sale Procedures Order and this Plan, and to determine all questions and disputes regarding such sales or transfers;

12.     to determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

13.     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

14.     to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, or the Confirmation Order;

15.     to enforce the obligations of any purchaser of any assets of the Debtor; and

16.     to enter an order concluding and terminating the Chapter 11 Case.

**C.**     **Closing of the Chapter 11 Case**. The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case to enter an order reopening the Chapter 11 Case after it has been closed.

## ARTICLE XIII -- <u>MISCELLANEOUS PROVISIONS</u>

**A.**     **Further Assurances**. The Debtor and/or the Reorganized Debtor as applicable agrees, and is hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

**B.**     **Notices**. All notices, requests or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to the Debtor or the Reorganized Debtor, RAYNOR SHINE SERVICES, LLC, Attn. Michael Dinkel, 100 Hermit Smith Road, Apopka, FL 32703, with a copy to Frank M. Wolff, Esquire, Latham, Luna, Eden and Beaudine, LLP, PO Box 3353, Orlando, FL 32802.

**C.**     **Governing Law**. Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D.**     **Limitation on Allowance**. No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

**E.**     **Confirmation Order and Plan Control**. To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any

such agreement. Except as otherwise set forth in this Plan, the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

        **F.**    **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

        **G.**    **No Liability for Solicitation**.  Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE XIV -- TRUSTEE FEES

        All fees payable under 28 U.S.C §1930, will be paid when due.


                  **RAYNOR SHINE SERVICES, LLC**

Dated:  08/26/2020        By:   /s/ Michael Dinkel
                        Michael Dinkel, Managing Member of
                        Management and Joint Ventures, LLC and
                        Mulch Properties, LLC, equity security holders
                        of Raynor Shine Services, LLC


                  **RAYNOR APOPKA LAND MANAGEMENT, LLC**

Dated:  08/26/2020        By:   /s/ Michael Dinkel
                        Michael Dinkel, Managing Member of
                        Management and Joint Ventures, LLC and
                        Mulch Properties, LLC, equity security holders
                        of Raynor Apopka Land Management, LLC


                  /s/ Frank M. Wolff
                  Frank M. Wolff, Esq.
                  Florida Bar No. 319521
                  fwolff@lathlamluna.com
                  bknotice1@lathamluna.com
                  **LATHAM, LUNA, EDEN & BEAUDINE, LLP**
                  111 N. Magnolia Avenue, Suite 1400
                  Orlando, Florida 32801
                  Tel: (407) 481-5800
                  Fax: (407) 481-5801
                  Attorneys for Debtors and Debtors in Possession

# Exhibit A

$100,000                                        _____, 2020
                                                Orlando, Florida

## PROMISSORY NOTE

The undersigned maker promises to pay to the order of SummitBridge National Investments VII, LLC, of _____, the principal sum of $100,000, with interest at 5% percent per annum, in twelve (12) equal installments of $_____ each, commencing _____, 2021 and on the same date of each month thereafter.

This note is made, executed and delivered under maker's chapter 11 plan of reorganization (the "Plan") in the U.S. Bankruptcy Court, Middle District of Florida, Orlando Division, Case No. 6:20-bk-00577-LVV.

If the maker fails to pay any installment when such installment comes due and does not cure such failure within ten (10) days after written notice of such failure from the holder of this note, then at the option of the holder, the holder may elect to accelerate and declare immediately due and owing the balance of the obligations owing under the note.

RAYNOR SHINE SERVICES, LLC


By:_____
        Michael Dinkel, Managing Member of
        Management and Joint Ventures, LLC and
        Mulch Properties, LLC, equity security holders
        of Raynor Shine Services, LLC

# Exhibit B

EXHIBIT "A"

Parcel 1:

The East 1/2 of the Southeast 1/4 of the Southeast 1/4 of the Southwest 1/4 of Section 1, Township 21 South, Range 27 East, Orange County, Florida; LESS the North 163.50 feet of the East 240.00 feet thereof; LESS road right of ways;

AND

Together with an ingress/egress easement over the West 40 feet of the West one half (W 1/2) of the Southwest one-quarter (SW 1/4) of the Southwest one-quarter (SW 1/4) of the Southeast one-quarter (SE 1/4) as per instrument recorded August 6, 2003 in Official Records Book 7035, Page 3449 and corrective Declaration thereto recorded in Official Records Book 10453, Page 8531, Public Records of Orange County, Florida.

Parcel 2:

The West 1/2 of the Southeast 1/4 of the Southeast 1/4 of the Southwest 1/4 and the Southwest 1/4 of the Southeast 1/4 of the Southwest 1/4 of Section 1, Township 21 South, Range 27 East, Orange County, Florida.

Parcel 3:

The Northeast 1/4 of the Southeast 1/4 of the Southwest 1/4 of Section 1, Township 21 South, Range 27 East, Orange County, Florida.

Parcel 4:

The Northwest 1/4 of the Southeast 1/4 of the Southwest 1/4 of Section 1, Township 21 South, Range 27 East, Orange County, Florida.

NB FL (10.13.16)

44726268;1

# Exhibit C

## Raynor Shine Services, LLC
### Equipment & Vehicles to be Sold
As of August 17, 2020

8/4/2020

| # | Type | Model Year | Equipment Description | ID/Serial# |
|---|------|-----------|----------------------|-----------|
| 1 | Miscellaneous | 2006 | 626 Cougar/ Wildcat Screen | 1W9SS53234F351278 |
| 2 | Miscellaneous | 2007 | Keystrack Frontier Screener | 591 |
| 3 | Miscellaneous | 1991 | SCARAB Compost Turner | 108 |
| 4 | Miscellaneous | 2005 | JD-482-2WD-21-5 Fork Lift Loader | 79153 |
| 5 | Grapple Truck | 2006 | 2006 Sterling L7501 Truck | 2FZHAZCVX6AV19357 |
| 6 | Grapple Truck | 2015 | Stearling 9513 Grapple Truck | 2FZHAZCV85AU00043 |
| 7 | Grapple Truck | 2006 | Western Model 4900 | 5KKKALDE86PW58192 |
| 8 | Grapple Truck | 2005 | Stearling Model LT950 | 2FZHAZCG85AU83698 |
| 9 | Semi Tractor | 2015 | Peterbilt 567 Semi Truck | 1XPCDP9XXFD307525 |
| 10 | Semi Tractor | 2009 | Kenworth W900L Semi Truck (Sold) | 1XKWD40X69J244301 |
| 11 | Semi Tractor | 2015 | Peterbilt 567 Semi Truck | 1XPCDP9X1FD307526 |
| 12 | Semi Tractor | 2015 | Peterbilt 567 Semi Truck | 1XPCDP9X3FD307527 |
| 13 | Semi Tractor | 2011 | Peterbilt 386 Daycab Truck | 1XPHDB9X5BD125380 |
| 14 | Semi Tractor | 2011 | Peterbilt 386 Daycab Truck | 1XPHDB9X6BD125372 |
| 15 | Semi Tractor | 2016 | Mack CHU613 Trac Truck | 1M1AN09Y2GM022910 |
| 16 | Semi Tractor | 2016 | Mack CHU613 Trac Truck | 1M1AN09Y4GM022911 |
| 17 | Trailer | 2008 | Mack Walking Floor  (temporarily not available) | 2MAMN45258C015374 |
| 18 | Trailer | 2014 | East Walking Floor Trailer (temporarily not available) | E1U2Y288ER051264 |
| 19 | Trailer | 2013 | Peerless 45' Box Trailer | IPLE04527DPE57895 |
| 20 | Trailer | 2015 | Peerless Walking Floor Trailer | 1PLE0482XFPK59288 |
| 21 | Trailer | 2016 | East 48' WF Semi Trailer | 1E1U2Y283GR057430 |
| 22 | Trailer | 2015 | East Walking Floor Trailer | 1E1U2Y287FR053170 |
| 23 | Trailer | 2016 | East 48' WF Semi Trailer | 1E1U2Y285GR057431 |
| 24 | Trailer | 2015 | Peerless Walking Floor Trailer | 1PLE04828FPK59290 |
| 25 | Trailer | 2015 | Peerless Walking Floor Trailer | 1PLE04821FPK59289 |
| 26 | Trailer | 2016 | Walking Genesis Alum Trailer | 1E1U2Y281GR055577 |
| 27 | Trailer | 2016 | Walking Genesis Alum Trailer | 1E1U2Y283GR055578 |
| 28 | Trailer | 2016 | Walking Genesis Alum Trailer | 1W1U2Y285GR055582 |
| 29 | Trailer | 2016 | Walking Genesis Alum Trailer | 1E1U2Y287GR055583 |
| 30 | Trailer | 2018 | Semi Trailer 48WF ST | 1E1U2Y284JR062806 |
| 31 | Trailer | 2019 | Transcraft Combo | 1TTF452C3K3137068 |
| 32 | Trailer | 1988 | Miller P2422 Flatbed Trailer | 1MLP24227JB152028 |
| 33 | Trailer | 1988 | Miller P2422 Flatbed Trailer | 1MLP24225JB152013 |
| 34 | Trailer | 1989 | Miller CPH22-36S Flatbed Trailer | H-2090 |
| 35 | Trailer | 1987 | Miller P2422 Flatbed Trailer | 1MLP24223JB152012 |
| 36 | Trailer | 1987 | Miller P2422 Flatbed Trailer | 1MLP24220JB152003 |
| 37 | Trailer | 1989 | Miller P2422 Flatbed Trailer | 1MLP2422KB233013 |
| 38 | Trailer | 1988 | Miller P2422 Flatbed Trailer | 1MLP24224JB152018 |
| 39 | Trailer | 1987 | Miller P2422 Flatbed Trailer | 1MLP24223JB152022 |
| 40 | Trailer | 1987 | Miller P2422 Flatbed Trailer | 1MLP24223JB152009 |

## Raynor Shine Services, LLC

Equipment & Vehicles to be Sold

As of August 17, 2020

8/4/2020

| # | Type | Model Year | Equipment Description | ID/Serial# |
|---|------|-----------|----------------------|-----------|
| 41 | Trailer | 1988 | Miller P2422 Flatbed Trailer | 1MLP24229JB152015 |
| 42 | Utility Truck | 2008 | Freightliner M2106V | 1FVACXDJ98HZ53170 |
| 43 | Utility Truck | 1999 | Ford F250 SD Truck | 1FTNW20L9XEB67982 |
| 44 | Utility Truck | 2000 | Cheverlot C350 Flatbed Truck | 1GBHC34R2YF433918 |
| 45 | Utility Truck | 2006 | Ford F250 SD Truck | 1FTSW21P86EA86636 |
| 46 | Utility Truck | 2007 | Ford F450 SD Truck | IFDXF46P67EB27515 |
| 47 | Pickup Truck | 2015 | Dodge Ram 1500 Truck | 1C6RR7FG1FS753891 |
| 48 | SUV Truck | 2016 | Jeep Grand Cherokee (Previously sold) | 1C4RJFJG2GC322151 |
| 49 | SUV Truck | 2013 | Ford Escape (Previously sold) | 1FMCU0G9XDUC03901 |
| 50 | Pickup Truck | 2014 | Dodge Ram 1500 Truck (Previously sold) | 1C6RR7WM0ES311589 |
| 51 | SUV Truck | 2011 | Dodge Durango (Previously sold) | 1D4SE5GT2BC732836 |
| 52 | Pickup Truck | 2017 | Dodge Ram 1500 Truck (Previously sold) | 1C6RR6LMXHS751855 |
| 53 | Pickup Truck | 2015 | Dodge Ram 1500 Truck (Previously sold) | 1C6RR6FT7ES391166 |

# Exhibit D

| Raynor Shine Services, LLC | | | | |
|---|---|---|---|---|
| Equipment & Vehicles to be Retained | | | | |
| *As of August 17, 2020* | | | | |
| | | | | |
| # | Type | Model Year | Equipment Description | ID/Serial # |
| **Heavy Equipment** | | | | |
| 1 | Loader | 2015 | John Deere 644K/ Wheel Loader | 1DW644KZJEF665656 |
| 2 | Loader | 2015 | John Deere 644K/ Wheel Loader | 1DW644ZHEF664630 |
| 3 | Loader | 2015 | John Deere 644K/ Wheel Loader | 1DW644KZ2HF666735 |
| 4 | Loader | 2015 | John Deere 644K/ Wheel Loader | 1DW644KZHEF665468 |
| 5 | Loader | 2018 | CAT Skid Steer 299D2 | FD202485 |
| 6 | Loader | 2018 | CAT Skid Steer 299D2 | FD202289 |
| 7 | Grinder | 2015 | Vermeer TG9000 Tub Grinder (needs Eng work) | 1VRY43484F1000207 |
| 8 | Excavator | 2012 | CAT 324EL Excavator | PNW00586 |
| 9 | Excavator | 2012 | John Deere 350G Excav/ Morbark Wood Sheer | 1FF350GXLE808815 |
| 10 | Forklift | 2010 | Moffett Forklift Kubota Diesel 3 Wheel Drive | J430128 |
| 11 | Grinder | 2008 | Vermeer TG9000 Tub Grinder | 1VRY4348661000130 |
| 12 | Grinder | 2018 | 2018 Diamond Z DZT1463B Tub Grinder | 1R9FX4632HC722218 |
| 13 | Grinder | 2005 | Morbark 1300 Tub Grinder | 571407 |
| 14 | Grinder | 2014 | Mobark 6600/ Grinder | 186-1165 |
| 15 | Miscellaneous | 2009 | Fecon/ Coloring Machine | 62309 |
| 16 | Miscellaneous | 2009 | Doppstadt SM 720 Screening Plant | W0962121781D0727 |
| 17 | Miscellaneous | 2018 | McCloskey 733RE Trommel Screen | 88540 |
| 18 | Miscellaneous | 2018 | McCloskey 733RE Trommel Screen | 88541 |
| 19 | Miscellaneous | 2018 | McCloskey 733RE Trommel Screen | 88556 |
| 20 | Miscellaneous | 2018 | McCloskey ST 100 Radial Stacking Conveyor | 88555 |
| 21 | Miscellaneous | 2018 | McCloskey ST 100 Radial Stacking Conveyor | 88614 |
| 22 | Miscellaneous | 2018 | McCloskey ST 100 Radial Stacking Conveyor | 88615 |
| 23 | Miscellaneous | 2018 | McCloskey ST 100 Radial Stacking Conveyor | 88616 |
| 24 | Miscellaneous | 2018 | McCloskey ST 100 Radial Stacking Conveyor | 88617 |
| 25 | Miscellaneous | 2015 | McCloskey Stacking Conveyor #36X80 | 84552 |
| 26 | Miscellaneous | 2010 | McCloskey Stacking Conveyor #36X80 | 70898 |
| 27 | Miscellaneous | | McCloskey Stacker ST80T | 89169 |
| 28 | Miscellaneous | 1994 | Homemade 22' HM Utility Trailer | GT61994 |
| 29 | Miscellaneous | 1984 | Autocar Water Truck | 1WBRGCAD3EU095631 |
| 30 | Miscellaneous | 2012 | CAT Mobile Generator | 5SLBG1521CL010988 |
| 31 | Miscellaneous | 2010 | CSA US/ MITM Mobile Pressure Washer | 15054038 |
| 32 | Miscellaneous | 2006 | WANCO Arrow Sign Board | 5F115101961004367 |
| 33 | Miscellaneous | 1994 | Ford Fuel Truck - 4000 gal on-road | 1FDYY82E4RVA10479 |
| 34 | Miscellaneous | 2004 | Peterbuilt Fuel Truck - 2800 gal off-road | 2NPNHZ7X54M829671 |
| 35 | Miscellaneous | 2005 | JCB 527 55 Load All Fork Lift Loader | SLP527555E1068262 |
| 36 | Miscellaneous | 2007 | CAT D5M Bulldozer | 13K15038 |

| Raynor Shine Services, LLC | | | | |
| --- | --- | --- | --- | --- |
| Equipment & Vehicles to be Retained | | | | |
| *As of August 17, 2020* | | | | |
| | | | | |
| # | Type | Model Year | Equipment Description | ID/Serial # |
| **Vehicles** | | | | |
| 37 | Grapple Truck | 2006 | Sterling LT9500 GR Truck | 2FZHAZCVX6AU29464 |
| 38 | Grapple Truck | 2007 | Kenworth T800 Semi Truck | 2NKDLB0X97M196047 |
| 39 | Grapple Truck | 2005 | Stearling LT9500 Truck - Rolloff | 2FZHAZCK25AU00061 |
| 40 | Grapple Truck | 2005 | Stearling LT9500 Truck - Rolloff | 2FZHAZCK85AU00064 |
| 41 | Grapple Truck | 2006 | Stearling LT9500 Truck | 2FZHAZCV75AU53767 |
| 42 | Grapple Truck | 2006 | Mack CV713 Grapple Truck | 1M2AG11C46M033076 |
| 43 | Grapple Truck | 2008 | International Paystar Truck | 1HTXLAPT28J655247 |
| 44 | Grapple Truck | 2007 | Stearling LT9000 | 2FZHAZCV07AX54495 |
| 45 | Trailer | 2008 | Homemade Box Trailer | ARKAVTL0880434238 |
| 46 | Trailer | 2008 | MAGT Dump Trailer | 1M9MJ263681435300 |
| 47 | Trailer | 2014 | ASPT Dump Trailer | FLT2008AG |
| 48 | Trailer | 2006 | Great Lake 23' Dump Truck | 1G9CD23386S139640 |
| 49 | Trailer | 2016 | Peerless 48' WF Semi Trailer | 1PLE0482XGPG59971 |
| 50 | Semi Tractor | 2005 | Freightliner CL-120 Truck - Yard Truck | 1FUJA6CV15LV08441 |
| 51 | Semi Tractor | 2015 | Peterbilt 567 Semi Truck | 1XPCP4EX4FD307967 |
| 52 | Semi Tractor | 2005 | Sterling A9512 Semi Truck Yard Truck | 2FWBA2CV35AN76606 |
| 53 | Semi Tractor | 2015 | Peterbilt 567 Semi Truck | 1XPCDF9X8FD307524 |
| 54 | Semi Tractor | 2005 | Peterbilt 385 Semi Truck Yard Truck | 1XPGDU9X55D848285 |
| 55 | Tractor | 2006 | Peterbilt 378 HD Truck - Yard Truck | 1XPFD4EXX6N646846 |
| 56 | Semi Tractor | 2018 | Mack CHU613 Truck | 1M1AN07Y3JM028287 |
| 57 | Semi Tractor | 2016 | Mack CHU613 Trac Truck | 1M1AN09Y6GM022909 |
| 58 | Trailer | 1994 | Crosley Trailer | 822154JS002335 |
| 59 | Trailer | 2006 | Imperial Trailer | 1Z9PH25246J213318 |
| 60 | Trailer | 1992 | WITZCO Challenger Lowboy Trailer | 1EMLB50R2N951578A |
| 61 | Trailer | 1988 | Miller P2422 Flatbed Trailer | 1MLP24225JB152027 |
| 62 | Trailer | 1988 | Miller P2422 Flatbed Trailer | 1MLP24220JB152016 |
| 63 | Trailer | 2018 | East Genesis ST | 1E1U2Y283JR061324 |
| 64 | Trailer | 2018 | East Genesis ST | 1E1U2Y289JR061327 |
| 65 | Trailer | 2018 | Semi Trailer 48WF ST | 1E1U2Y284JR062805 |
| 66 | Trailer | 2018 | Semi Trailer 48WF ST | 1E1U2Y286JR062807 |
| 67 | Trailer | 2016 | Fontain 55 Lowboy Trailer | 57JES52302G3572874 |
| 68 | Trailer | 2014 | Fontain Spec Lowboy Trailer | 57JE52305E3561428 |
| 69 | Utility Truck | 2015 | Ford | 57JM0510XF35P0853 |
| 70 | Utility Truck | 1987 | Ford LT9513 Water Truck (off road only) | 1FDYW80UXGVA60489 |
| 71 | Utility Truck | 1987 | Ford C-8000 Tank Fire Truck (off road only) | 1FDYD80U6HVA53904 |
| 72 | Pickup Truck | 2017 | Ram 2500 Truck | 3C6UR5CL8HG676222 |
| 73 | Pickup Truck | 2016 | Ram 1500 Truck | 3C6JR6AG8GG278070 |
| 74 | Pickup Truck | 2016 | Dodge Ram Truck | 1C6RR7LG6GS112255 |
| 75 | Pickup Truck | 2016 | Dodge Ram 1500 Truck | 3C6JR6AG1GG278072 |